## SWEET v. SALT LAKE CITY.

No. 2450.   Decided July 30, 1913 (134 Pac. 1167).

1. PLEADING—DEMURRER TO COMPLAINT GOOD IN PART. Comp. Laws 1907, sec. 312, requires a written claim to be presented to city council for any injury caused by the defective condition of a street within any incorporated city or town, and that no action shall be maintained unless it appears that such claim

was so presented and disallowed by the council. *Held*, that, though a complaint contained an item for $1000 damages not included in such original claim, yet, as it did contain items that were included, it was not vulnerable to a general demurrer, since it stated a good cause of action for the items included. (Page 311.)

2. APPEAL AND ERROR—QUESTIONS PRESENTED FOR REVIEW. Where defendant objected to the admission of evidence, then moved to strike it, and afterwards requested the court to charge the jury to disregard it, it had its choice of methods of presenting the question to the appellate court, and was not required to present it in more than one form; hence the fact that it did not assign error as to the ruling of the court in admitting the evidence, but instead assigned error for its refusal to charge, was not a waiver of the error. (Page 312.)

3. MUNICIPAL CORPORATIONS — ACTIONS — CONDITIONS PRECEDENT — PRESENTATION OF CLAIM. Under Comp. Laws 1907, sec. 312, requiring, as a condition precedent to an action against a city for negligent injury by a defective street, the presentation to the city council for audit and allowance of a claim therefor, describing the nature and extent of the injury, and the damages claimed, though an injured person may recover the actual damages sustained, even though such damages are in excess of the amount included in the claim, if they are the necessary and proximate consequence of the injury described in the claim presented, yet, where plaintiff sustained damages because of his automobile running into an open conduit, and presented his claim as required, the total amount of which was $249 including "necessary repairs to automobile $133," he could not claim and recover additional damages for $1000 for its "depreciation in value and general impairment," since such claim was not included in the original claim, and could not be said to be the proximate consequence of the injuries therein included.[1] (Page 313.)

4. MUNICIPAL CORPORATIONS—INJURY—NOTICE OF CLAIM—DESCRIPTION OF DAMAGES—SUFFICIENCY. Under Comp. Laws 1907, sec. 312, requiring, previous to an action against a city for negligent injury, a written notice specifying the nature and extent of the injury and the damages claimed, a notice wherein damages were specified as "for general impairment" of an automobile was an insufficient description of the damages. (Page 316.)

5. MUNICIPAL CORPORATIONS—CLAIMS AGAINST CORPORATION—PLEADING. Where plaintiff, in an action against a city for damages caused by his automobile running into an excavation, claimed

---

[1] Mackay v. Salt Lake City, 29 Utah, 247, 81 Pac. 81, 4 Ann. Cas. 824; Bowman v. Ogden City, 33 Utah, 196, 93 Pac. 561.

damages in addition to the damages included in his claim presented to the city under Comp. Laws 1907, sec. 312, requiring, previous to an action against the city, the presentation of a claim to the city council, it was incumbent on plaintiff to plead and prove some reason why such damages were not included in the claim presented to the city, and why the terms of the statute should not control. (Page 316.)

6. EVIDENCE—DEFECTIVE STREET—QUESTION FOR JURY—PRECAUTIONS AGAINST INJURY. In an action against a city for an injury caused by plaintiff's automobile running into an excavation in a street at night, it was error to permit plaintiff to testify as an expert as to what particular precautions the city should have taken to properly guard the excavation, since it was a question for the jury, not for plaintiff, as to what precautions would be reasonably necessary for the city to take under the circumstances.[2] (Page 318.)

7. MUNICIPAL CORPORATIONS—OBSTRUCTION IN STREET—PRECAUTION AGAINST INJURY. It is the duty of a city to keep its streets in a reasonably safe condition for travel for all kinds of vehicles in general use, including automobiles, and to exercise ordinary care to warn the public of any excavation or obstruction. (Page 321).

8. MUNICIPAL CORPORATIONS — QUESTION FOR JURY — PRECAUTION AGAINST INJURY. Whether a city used such means as was reasonably necessary to properly warn the traveling public as to an excavation or obstruction in a public street was a question for the jury. (Page 322.)

9. MUNICIPAL CORPORATIONS—DEFECTS IN STREETS—JURY QUESTION. Where the question before the jury was whether a city had used ordinary care to guard an excavation, expert testimony was not called for, but all that was necessary was for the court to charge the law as to the city's duty, and then, from a full description of the situation and condition of the street, the jury, as men of ordinary intelligence, could say whether the city exercised ordinary care. (Page 322.)

10. MUNICIPAL CORPORATIONS — QUESTION FOR JURY — PRECAUTIONS AGAINST INJURY. A city was not negligent, as a matter of law, in failing to have lights near an excavation in a street; but the question was for the jury whether the means used by the city to guard the excavation were such as ordinary care demanded. (Page 322.)

11. MUNICIPAL CORPORATIONS—OBSTRUCTION IN STREET—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. Whether plaintiff, in an ac-

---

[2] Fritz v. Western Union Telegraph Co., 25 Utah, 263-269, 71 Pac. 209.

tion for an injury caused by his automobile running into an open excavation in a street, was guilty of contributory negligence in not having his automobile properly lighted and running at too great a speed, was for the jury. (Page 325.)

APPEAL from District Court, Third District; *Hon. George G. Armstrong,* Judge.

Action for personal injuries by F. A. Sweet against Salt Lake City.

Judgment for plaintiff. Defendant appeals.

REVERSED AND REMANDED.

*H. J. Dininny* and *Aaron Myers* for appellant.

*E. V. Higgins* for respondent.

FRICK, J.

This is an action to recover damages for injuries sustained by the occupants of respondent's automobile and to said automobile by driving the same into an exposed and uncovered conduit or ditch in one of the streets of Salt Lake City, which ditch, it is alleged, was negligently left unprotected and unguarded by said city, appellant herein. We shall state the facts deemed necessary in connection with the particular point decided.

Appellant's counsel contend that the court erred in overruling their general demurrer to the complaint. The question with regard to the demurrer arises as follows:

We have a statute (Comp. Laws 1907, section 312) which, so far as material here, provides:

"Every claim against an incorporated city or town for damages or injury alleged to have been caused by the defective, unsafe, dangerous, or obstructed condition of any street, . . . culvert, or bridge, . . . or from the negligence of the city or town authorities in respect to any such street, . . . culvert, or bridge, within *thirty days*

after the happening of such injury or damage, be presented to the city counsel . . . in writing, signed by the claimant or by some person by claimant authorized to sign the same, and properly verified, stating the particular time at which the injury happened, *and designating and describing the particular place in which it occurred, and also particularly describing the cause and circumstances of the said injury or damages,* . . . *and also stating the nature and probable* extent of such injury, *and the amount of damages claimed on account of the same*; . . . and no action shall be maintained against any city or town for damages, or injury to person or property, unless it appears that the claim for which the action was brought was presented as aforesaid to the city council . . . and that such council . . . did not within ninety days thereafter audit and allow the same. *Every claim, other than claims above mentioned, against any city or town,* must be presented, *properly itemized or described and verified as to correctness by claimant or his agent, to the city council* . . . within one year after the last item of such account or claim accrued, *and if such account or claim is not properly or sufficiently itemized or described or verified, the city council* . . . *may require the same to be made more specific, as to the itemization or description, or to be corrected as to the verification thereof.*"

Section 313 provides that, unless the claim is presented to the city council "in the manner and within the time in section 312 specified," it shall be barred; "*provided, that in case an account or claim other than a claim made for damages on account of the unsafe, defective, dangerous, or obstructed condition of any street,* . . . *culvert, or bridge, is required by the council or board to be made more specific as to itemization or description, or to be properly verified, sufficient time shall be allowed the claimant to comply with such requirement.*" (Italics ours.)

Without pausing to set forth the allegations of the complaint, it must suffice to say that the first contention that the complaint is defective in substance because it does not suffi-

ciently allege the defective, dangerous, or unguarded condition of the street is untenable.

The next contention is that the complaint is defective in substance because it contains a claim for injuries and damages which was not included in the claim presented to the city council. This contention must also fail for the reason that it was alleged in the complaint that a claim had been presented in which certain items of damages were claimed. True, there was an item or claim for damages in the complaint for $1000 which was not included in the original claim presented to the city council; but, inasmuch as there were certain items of damages contained in the complaint which were also contained in the original claim, the complaint is not vulnerable to a general demurrer, since it at least constituted a good cause of action for some amount.

Appellant's next contention is more serious. Respond-, ent, in presenting his claim to the city council for allowance, complied with the provisions of section 312, *supra,* by specifically stating the nature, extent, and amount of the injury and damages sustained and claimed. The aggregate of the items claimed amounted to $245.69. Appellant did not audit and allow the same within the time provided by the statute, and hence this action was commenced. In the complaint, after setting forth the items of damage, etc., contained in the original claim presented to the city council, respondent also claimed additional damages in the following words: "To depreciation in value of said automobile by reason of its general impairment caused by such falling (into the ditch or conduit) and by reason of the making of necessary repairs thereon." In the original claim presented there were items for repairs and otherwise as follows: "To necessary repairs of automobile, $133.19; to loss of pocketbook containing money and jewelry," lost in the ditch into which the automobile was driven, $78; to medicine and medical attendance to the occupants of said automobile, . . . $14.50;" and for taking the automobile out of the ditch $20 —making a total of $245.69 claimed in the original claim

presented as aforesaid. No reason was pleaded why the item for $1000 was not originally claimed, or why it was not presented to the city council within the time required by the statute or at any time. When the respondent offered evidence to sustain the claim for $1000, counsel for appellant made proper objections, among others, that the claim had not been presented for audit and allowance as required by section 312, *supra*. The objections were overruled and the evidence was admitted, and the jury allowed respondent the sum of $750 "damages," which is $504.31 in excess of or more than double the original amount claimed. After the evidence with respect to said $1000 item had been admitted by the court, and before the case was submitted to the jury, appellant's counsel moved that the same be stricken from the record, which motion was denied. After the evidence of both sides was all in, appellant's counsel also requested the court to charge the jury to disregard all of the evidence relating to said $1000 item. The court refused to so charge, but submitted the same to the jury, and counsel assign the refusal of the court to so charge as error.

Respondent contends that, inasmuch as appellant has not assigned error upon the ruling of the court in admitting the evidence with respect to the $1000 item, the error, if any, in so doing, is waived. Not so. Counsel had their choice of methods in presenting the question to this court. They could have insisted upon their objection and exception to the court's ruling in admitting the evidence, or they could have relied on the motion to strike the evidence, or upon the refusal by the court to give their request to charge the jury to disregard the evidence. By objecting to the admission of the evidence when it was offered appellant had laid the foundation for the right to pursue the method adopted by it and could thus raise the question of law by offering a request to direct the jury to disregard the evidence upon the theory that it was not proper evidence, to be considered in the case. Appellant was not required to present the legal question to this court in more than one

form, although it had presented it to the trial court in several ways.

The question to be determined, therefore, is whether under the circumstances, the respondent could legally claim, and adduce evidence in support of the claim, that his automobile had suffered damages for the reasons stated to the extent of $1000, or to the extent of any amount in excess of the amount claimed by him in the claim originally presented to the city council. His counsel seek to sustain the court's rulings upon the grounds:

(1) That although the amount claimed must be stated in the claim that is presented to the city council, yet the amount claimed is not controlling provided it develops after the original claim is presented that there are other consequential damages which were caused by the injuries complained of and referred to in the claim; and (2) that where the injured party cannot on account of physical or mental inability present the claim within the time fixed by the statute, or cannot state the amount of the damages because he did not and could not ascertain it within such time, he may nevertheless recover the actual amount of damages sustained by him.

To sustain the first proposition the case of *Mackay v. Salt Lake City,* 29 Utah, 247, 81 Pac. 81, 4 Ann. Cas. 824, is relied on. In that case this court in effect held that where the extent of the injuries (in that case personal injuries) are not known at the time the claim is presented to the city council, and thereafter it develops that the injuries are more serious than it was supposed and proved to be permanent, and it is made to appear that the injuries are the ones described in the original complaint, under such circumstances the injured person may nevertheless prove and recover the full amount of damages sustained by reason of the injuries complained of. The doctrine that purely consequential damages which are the proximate result of the injuries described in the original claim presented may be recovered, although they are in excess of the amount originally claimed, is now well established. The question that must be

determined in this case is, however, entirely different. In the first place, our statute requiring that all claims for injuries sustained through the alleged negligence of the city must be presented for allowance within the time specified or no recovery can be had, since the case of *Mackay v. Salt Lake City, supra,* was decided, has been twice amended. The injury passed on in the Mackay Case occurred in December, 1902, and was controlled by Rev. Stat. Utah 1898, section 312. That section was first amended in 1903 (Laws Utah 1903, p. 12), and was again amended in 1905 (Laws Utah 1905, p. 5), at which time section 313 was also amended. The amendments or changes made in the law of 1905 are indicated in italics.

The case of *Bowman v. Ogden City,* 33 Utah, 196, 93 Pac. 561, is also cited by respondent. That case arose under the amendment of 1903, a portion of which is quoted by Mr. Justice Straup in the opinion, and the decision is based upon the quotation as there given. The portion of the statute quoted by Mr. Justice Straup as aforesaid was eliminated therefrom by the amendment of 1905 so far as the same applied to claims arising through negligence. From an examination of the Mackay Case and the cases there cited, it will at once be seen that the statute in its present form, and which controls the case at bar, is very different from what it was when the Mackay Case and the Bowman Case were dicided, and is also different from any statute passed on by any of the courts in the cases cited and relied on in the foregoing cases or by respondent's counsel in this case. The purpose of the statute in requiring the claimant to particularize and state the amount he claims and that he shall not recover for any items or injury not described or stated in the claim presented is so manifest that it would amount to a virtual repeal of the statute to allow respondent to recover for the $1000 item. What is that item for? In what way was it either described or referred to in the original claim presented, either directly or indirectly? In the original claim the damages and injuries were stated in the following language:

"The damage to property and person in the sum of $245.-69, as follows:

Pulling car out of creek........................$20 00
Bill for repairing frame, seat, etc............. 50 69
Replacing broken lamps........................ 30 00
Replacing broken crank case and broken light
  brackets ........ ..................... 42 50
Necessary expenditures yet to be made for repairs 10 00
Doctor bill for attendance upon Mrs. F. A. Sweet
 and Mrs. F. E. Ogle .................... 12 00
Drug bill for medicinal articles ................ 2 50
To value of contents of handbag containing money,
  watch, three gold chains, two gold bracelets,
  pocketbooks, etc... ..................... 78 00"

The other portions of the claim simply refer to the time and place of injury, and how it occurred, and in what way it was claimed appellant was negligent, with a statement that the repairs to the automobile were necessary and that the other property referred to was lost.

The most that can be said is that the respondent in his claim alleged that, in addition to the specific injuries and damages claimed by him in the original claim presented to the city council, his automobile had depreciated in value "by reason of its general impairment caused by falling," etc.

The purpose of our statute is very clear, which is to require every claimant to clearly state all of the elements of his claims to the city council for allowance as a condition precedent to his right to sue the city and recover his damages in an ordinary action. That the state through its lawmaking power has an absolute right to impose such conditions, all courts agree. One of the principal objects of the statute is to prevent spurious claims from being paid, and, in order to fully accomplish that purpose, to give the city officials ample opportunity to examine into both the cause and extent of the injury and also to test the good faith of the claimant in presenting the claim. In view of the form in which the claim was presented in this case, could any one suspect that a claim for $1000 for "general impairment" of the auto-

mobile could ever follow either as a proximate or remote consequence of the injuries described and complained of in the original claim? What opportunity did the city ever have to inquire into the item for $1000? None whatever. In the Mackay Case the personal injuries sustained by the claimant had been fully described and the city had at least some opportunity to inquire into and learn the extent of the injury. While it perhaps could not learn all or as much about the injuries as the plaintiff knew, yet under the claim there presented it could by investigation arrive at some conclusion with regard to consequences and results. Again, from the injuries described in that case any one could infer that the injuries might be more or less serious or even permanent.

Moreover, if the statement that is contained in the complaint in this case with respect to the $1000 item had been included in the original claim presented to the city council in the language in which it is pleaded, it is extremely doubtful whether recovery therefor could have been had by respondent under the authorities. He certainly could not, under the authority of *Tattan v. City of Detroit,* 128 Mich. 650, 87 N. W. 894, and *Eggleston v. Town of Chautauqua,,* 90 App. Div. 314, 86 N. Y. Supp. 279, because insufficiently described. Under the statute as it stood after the amendment of 1903 and before the amendment of 1905, the defect could have been cured, as pointed out in *Bowman v. Ogden City, supra.* It is clear, however, that this could not be done under the amendment of 1905. Indeed, the language of the amendment of 1905 was no doubt intended to prevent that.

But, assuming that the case were one where the injuries and damages were such that for special reasons over which the claimant had no control nevertheless they were not and could not be known in time to present the same to the city council, and that therefore, under certain conditions, the claimant could nevertheless plead, prove, and recover the actual damages sustained, yet, under many of the authorities, respondent could not recover in this case.

Where the claimant seeks to recover notwithstanding the provisions of a special statute, it is incumbent on him to plead and prove some reason why the terms of the statute should not control. Whether the respondent could or could not, for special reasons, comply with the statute, or whether in bringing the action he was making a claim in good faith, were questions of fact and not of law. In the case at bar, however, the court simply assumed respondent's excuses to be sufficient without even having pleaded them. This at all events the court had no right to do. *Fortsyth v. City of Oswego,* 191 N. Y. 441, 84 N. E. 392, 123 Am. St. Rep. 605; *Born v. Spokane,* 27 Wash. 719, 68 Pac. 386, followed in *Pierce v. Spokane,* 59 Wash. 615, 110 Pac. 537. See also, 4 Dill. Mun. Corps. (5th Ed.) section 1613, p. 2819. Our statute is, however, not only very specific'with respect to the presentation of claims arising out of the alleged negligence of cities and towns, but it has been made so since the former decisions of this court and with the evident purpose of requiring claimants to comply with the present terms of the statute with at least reasonable strictness. Such being the evident purpose of changes made in the statute, the courts have no alternative save to enforce them. A somewhat similar situation arose in the state of Washington, as appears from the case of *Benson v. Hoquiam,* 67 Wash. 90, 121 Pac. 58. As pointed out by the Supreme Court of Washington, it is the duty of the courts to follow and enforce the statute. The question is not whether the statute is the best that could be devised nor whether it reflects justice in all cases. These are questions for the legislature and not for the courts to determine. If the statute is within the power of the legislature to adopt, we are as much bound by it as is the ordinary citizen.

By what we have said upon this question we do not wish to be understood that an injured person may not at the trial recover the actual damages sustained by him where such damages are the necessary and proximate consequences of the injuries described in the claim presented and where the injured person could not know at the time of the presenta-

tion of the claim that the injuries were serious or permanent where these latter facts are pleaded and proved. What we do hold, however, is that where the claimant seeks to recover for a different item or element of damages, as in this case, he cannot do so for the reason that such item or element is not described or referred to in the original claim presented to the city council.

We have gone into the question at considerable length for the purpose of avoiding, if possible, confusion with respect to the numerous decisions upon the question and to make the proposition clear that this decision is based upon the statute of our own state.

It is next urged that the trial court erred in permitting respondent to testify as an expert upon the question of the extent and manner that the excavation in the street— that is, the ditch in question—should have been 6. guarded or protected by barriers, signal, or other lights. Briefly stated, the evidence was:

That North Temple Street runs east and west, and that there is a walled-up but open conduit, or ditch running longitudinally in about the center thereof, which ditch or conduit was used to conduct the surplus or waste waters from City Creek Canyon through the city westward into the Jordan River. That First West Street runs north and south across said North Temple Street at the place of the alleged accident. That at the intersection of said streets said ditch or conduit was completely covered over by the city with a bridge or culvert so that the full width of First West Street could be used, and that driveways were used on North Temple Street on either side of the ditch aforesaid. That either in June or early in July, 1909, the surplus waters increased to such an extent that they washed out the bridge or culvert which was placed across said ditch on First West Street. That the city preparatory to putting in a permanent bridge on said intersection put in a temporary driveway for teams on the east side of First West Street and a footway for pedestrians on the west side thereof leaving the ditch open in a portion of the center of said street. That

the city guarded said opening by throwing up dirt ridges
from fifteen to eighteen inches high and several feet wide
immediately on either side of said ditch at the point where
it remained open and also placed upright posts crossed in the
form of a letter X, in the crotch of which it placed boards
or pieces of timber longitudinally as barriers on either side
of said ditch.    That it also had an electric arc light on a
pole above the intersection of said streets which, when
lighted, illuminated the whole intersection and for some
distance on either side thereof.    That on the 4th day of
July, 1909, at about 9:15 p. m., while it was raining and
dark, and when the street was in the condition aforesaid,
and at the time when the arc light for some cause not dis-
closed was not emitting light, respondent and his family in
coming from a neighboring village with his automobile with-
out having the front gas lamps or headlights on said auto-
mobile lighted, but having two oil lamps lighted thereon
immediately in front of the chauffeur's seat and assuming
First West Street to be in its ordinary condition, in travel-
ing with his automobile at a rate of speed of from six to ten
miles an hour, drove the same against the barriers aforesaid,
throwing them down, drove over them, and over the dirt
ridges into the open space of said ditch, and in doing so
suffered the injuries and damages complained of.

One of the principal acts of negligence relied on by re-
spondent—in fact, the only one tried out—was the city's
failure to properly light and guard the open space in said
ditch to which we have referred.    In order to establish the
city's negligence in failing to properly light and guard said
ditch, the respondent, over appellant's objections, was per-
mitted to testify as follows:

"There should be constructed upon each side of the ob-
struction and around all that part that was within the street,
the traveled part of the street, there should be a guard in the
form of a fence or railing, a sufficient distance away from
the obstruction to warn people and to prevent them from
running, from actually running in, and along such guard
there should be—and around this substantial guard con-

structed around such a dangerous pit as has been described there should, during the nighttime, after daylight there should be red lanterns or red lights displayed, and there should be enough of them so that if one or two or a few of them go out there would still be sufficient left burning to give notice to the public that there was a danger ahead. The street at such a point should be lighted by night as a further protection or precaution. Such a light should be fixed so there would be no possibility of anybody running into it without having ample and sufficient warning in advance."

It is now urged that the court erred in permitting the witness to testify as aforesaid and in allowing the testimony to be considered by the jury. Respondent seeks to justify the court's ruling upon the theory that the witness testified as an expert upon a subject involving expert knowledge. To sustain his contention he cites 5 Ency. Ev. pp. 550, 600, 601, and Jones, Ev. section 382; also, *Fritz v. Western Union Telegraph Co.*, 25 Utah, 263-269, 71 Pac. 209. In our judgment neither of these authorities sustains the contention. It is palpably clear from respondent's testimony that he, and not the jury, was permitted to say what was reasonably necessary for the city to do in order to afford sufficient protection to those using the street in question. As we have pointed out, there were two driveways on North Temple street, one on the north and the other on the south side of the ditch in question. The witness would have required the city to close these driveways by placing barriers beyond them, It may be that it was necessary to have done this, but whether it was, was not for the witness to say upon the one hand, nor for the city to say that it was not upon the other; but it was for the jury to say whether, under all the facts and circumstances, the city should have placed the barriers farther away from the ditch. In this state there is no statutory provision requiring the city to place signal or other lights as a means to protect travelers. And while under the facts in this case it perhaps would have been proper to charge the jury that as a matter of

law it was the duty of the city to have placed one or more signal lights at or near the place of danger to indicate and point out the same, yet in such cases the question of whether one or more signal lights should have been used in connection with barriers or other means if any were used to point out the danger is ordinarily for the jury. The error committed by the court in permitting the witness to testify upon the subject, and the error of the witness, therefore, consists of an attempt to prescribe a method for the city how it should discharge the legal duty imposed upon it with respect to disclosing a defective condition of its streets. The city was required to use ordinary care to apprise those who might use its streets of the danger (and in this case ordinary care may have required signal lights), but the law does not prescribe any particular method by which it should have done so, and in its final analysis the question is ordinarily for the jury to say whether, by what the city did, or omitted to do, it had discharged its legal duty. While one might suggest that a light would indicate the danger, yet if the city met the duty imposed upon it in another way it would not have constituted negligence to have omitted to place the light. The witness also testified that the city should have kept burning a street or intersection light. The jury might well have understood the witness to mean that it was the duty of the city to light its streets under certain conditions during all hours of the night. This, as we shall hereafter see, is not the law.

It was the duty of the city to keep its streets in a reasonably safe condition for travel by all kinds of vehicles in general use, including automobiles, and in 7 case of a defective or dangerous place in any street it was its duty to exercise ordinary care and diligence to apprise the traveler of such defect or dangerous condition by placing barriers or signals, or by some other efficient means point out the danger.

While it was not required to use any specific means, yet it was required to use such means as were rea-

43 Utah 21

sonably necessary and efficient to accomplish the result, and whether in a particular case and under the circumstances disclosed by the evidence the city has discharged the duty aforesaid is ordinarily a question of fact. In this case the witness was permitted to usurp the functions of the jury.

In our judgment the question before the jury in this case did not call for expert evidence at all. Rogers Exp. Ev. (2d Ed.) sections 4, 5. In our judgment all that is necessary in cases like the one at bar is for the court to inform the jury of the duty the law imposes, and then from a full description of the situation and the condition of the street, together with what the city did or omitted to do, a jury composed of men of ordinary intelligence and experience can readily determine whether the city has complied with its duty or not, keeping in mind, of course, the conduct of the complaining party if such conduct is made an issue. To attempt more than this is more apt to confuse than to enlighten the jury.

It is next contended that the court erred in charging the jury as follows:

"It appears from the evidence that the defendant city makes no contention that signal lights were placed at or about the excavation in question. It does claim, however, that, by reason of a street light situated at such excavation, the existence of such obstruction and the danger therefrom were made apparent to one driving along the street, and himself in the exercise of due care. And in such behalf you are instructed that, under the facts as shown in this case, it was the duty of such defendant city to exercise ordinary care that such street light be kept burning continuously during the entire night in question and if it failed to do so, and such condition existed so long prior to the accident that the defendant, if it had exercised reasonable care and diligence in the supervision of its streets, ought to have discovered such condition and remedied the same, such failure on its part would be negligence."

Respondent, however, insists that the exception to the instruction is insufficient to require us to review it here. We deem the exception sufficient, and in view that the case will have to be remanded for a new trial for other reasons, and because the legal proposition involved in the instruction will necessarily again arise, we shall not now pause to give our reasons why we deem appellant's exception sufficient to authorize us to review the charge. The instruction is open to criticism for several reasons:

(1)  It is open to the criticism that the court assumed that the city was at all hazards required to maintain either a signal or some other light at the place in question; (2) it is open to the criticism that the court permitted the jury to infer (although perhaps not so intended) that it was the duty of the city to maintain a street or intersection light constantly lighted during all hours of the night, and, if the jury found that thirty minutes was sufficient to impute notice to the city that the light was out, then the city was negligent in not having the same relighted within that time without any evidence whatever upon which to base such a finding. That is, there was no evidence whatever what caused the light to be out in a rainy and stormy night, but the jury were left to assume that it was due to some fault of the city, and further to assume that because it remained out for thirty minutes that was also due to some want of ordinary care on its part. It may be true that the city was negligent in omitting to have one or more signal lights burning at or near the open space in the street to warn travelers of the unsafe or dangerous or defective condition thereof, but whether it was or not, or whether the means, if any were used by the city to warn the traveler, were sufficient or not, were questions of fact for the jury to be determined from all the facts and circumstances in evidence before them. In this regard the city could choose its own instrumentalities or means to warn the traveler, and it was for the jury to say whether the ones chosen by it were reasonably sufficient to apprise the users of the street of the danger to which they were exposed. The error

of the court lies in its apparent assumption that the city
was required to use some particular means to protect the
traveler. True, it may be that where a street light is
maintained it may answer the purpose of signal lights, but
that is a different thing from requiring a street light to be
maintained as a matter of legal duty. In the absence
of some statute compelling it, cities are not required to
maintain lights in their streets. *Herndon v. Salt Lake
City,* 34 Utah, 84, 95 Pac. 646, 131 Am. St. Rep. 827,
and cases there cited. The mere fact that a city lights its
streets for the convenience of the inhabitants and others
does not impose upon it the legal duty to maintain street
lights at all times at its peril. It is quite true that a cer-
tain place in a street may be dangerous and unsafe without
any lights, while such place may be reasonably safe with
sufficient lights. This is so, however, because the lights
disclose the condition that makes the street unsafe or dan-
gerous, and thus gives the traveler an opportunity to re-
main in the safe portion of the street, and not because
the dangerous condition is removed or made safe by the
light. To maintain a light, therefore, may not only pre-
vent injury, but may also save the city from liability by
reason of making an unsafe place so obvious that it would
constitute negligence *per se* on the part of the traveler not
to see it.

It is, however, not the legal duty of the city to maintain
street lights, although, as we have seen, it may be its duty
under certain circumstances not only to put up barriers but
also to place signal lights for the purpose of indicating un-
safe or dangerous places in streets and to warn those who
may use them of the danger to which they may be exposed.
The duties of the cities in that regard are fully defined in
the case of *Herndon v. Salt Lake City,* 34 Utah, 65, 95
Pac. 646, 131 Am. St. Rep. 827, and need not be repeated
here. In the case at bar, therefore, if the city was negli-
gent in not maintaining a light, it was because it did not
put up a signal light or lights, and not because it did not
maintain the light burning at the intersection of the two

streets in question, and this is so notwithstanding the fact that if the light had been burning it might have been sufficient to excuse the city from not putting up a signal light or lights. Upon this point we must not confuse that which the city might have done to prevent an injury upon its streets with what it was legally required to do in that regard. We must not confuse questions of law with what are properly questions of fact. We are of the opinion, therefore, that the court in the instruction imposed a greater duty upon the city than the law imposes. This was error.

It is also insisted with much vigor that the respondent cannot recover on account of his negligence in driving without sufficient lights upon his automobile in a dark and rainy night and at an excessive rate of speed. Under the evidence as it now stands, it is, to say the least, very doubtful whether respondent exercised due care in other respects. Since the case is to be remanded for a new trial for other reasons, we shall not discuss the evidence nor indicate what our conclusions would be under the evidence as it now stands if we were the triers of fact, except to say that the question of both speed and lights should be specifically submitted to the jury. The statute requiring automobiles to be equipped with lights after sunset is not very specific. The language of the statute is that an automobile shall be so constructed "as to exhibit during the period from one hour after sunset to one hour before sunrise two lamps showing white lights visible within a reasonable distance in the direction towards which such vehicle is proceeding." Whether the lights are of the character required by the statute must ordinarily be determined from the evidence, and in case they do not conform to the statutory requirements the question still remains whether the absence of sufficient lights was the proximate cause of the accident or not. These are questions of fact. The same may be said with regard to the speed.

It is also insisted that the court erred in refusing appellant's request to charge the jury to the effect that appellant was not required to maintain its streets in any dif-

ferent condition for the use of automobiles than for any other vehicles, and, if the jury should find "that the street where the accident is alleged to have taken place was in a reasonably safe condition for ordinary travel, the plaintiff is not entitled to recover in this action." As we have seen, it is the duty of the city to maintain its streets in a reasonably safe condition for use by all kinds of vehicles in general use, including automobiles. Of course, the city is not required to take different or greater precautions for the users of automobiles than it does for those who use other kinds of vehicles, but it must exercise ordinary care to provide a reasonably safe passageway over all of the streets. This general duty was sufficiently indicated by the court in its general charge. The real question in this case was not so much the safe condition of the street as it was whether the city had discharged its duty in pointing out or indicating an unsafe or dangerous place in the street.

There are quite a number of other assignments of error argued, but most of them have been sufficiently covered by what has been said, and the others are not of sufficient importance to require special consideration. We desire to add in conclusion, however, that the issues of this case are very narrow. While, as we have remarked, the general or broad issue of the unsafe or dangerous condition of the streets in question is presented by the complaint, yet the real issue tried and to be tried is not whether the street was reasonably safe for travel, but whether the city had exercised the ordinary care required of it in placing barriers or signals to apprise the traveler of the actual condition of the street so that he could avoid being injured. The city was not required to maintain the entire width of the intersection in a safe condition for travel in case of a flood. It was not even required to keep open any portion of the intersection during such time as was reasonably necessary to make repairs; but, so long as the city has chosen to prepare a portion of the intersection for travel, it was bound to exercise ordinary care in discovering and using means which were sufficient to give timely warning to those

who might use the streets of the impending danger. There is no issue presented that the place which was prepared for travel was not reasonably safe, nor reasonably sufficient; but the only contention is that the city was negligent in not placing sufficient barriers and signals to warn the traveler on the streets of its actual condition. That issue and the one of contributory negligence as herein explained are, under the evidence as it now stands, the only issues in the case.

The judgment is reversed, and the cause is remanded to the district court of Salt Lake County, with directions to grant a new trial and to proceed with the case in accordance with the views contained in this opinion. Costs to appellant.

McCARTY, C. J., concurs. STRAUP, J., concurs in the result.