# MACKAY v. SALT LAKE CITY.

## No. 1610 (81 Pac. 81).

1. MUNICIPALITIES —PERSONAL INJURIES—NEGLIGENCE— DEFECTIVE BRIDGES—ASSERTING CONTROL OVER BRIDGE—LIABILITY.—Where it appeared that at the time of the accident, defendant city was, and for a long time prior thereto had been, asserting control over a bridge within its corporate limits, and had several times repaired the same; that the plank flooring of the bridge was laid by defendant's bridge carpenter, who, acting as such, inspected the woodwork of the structure shortly before the accident; that a long time prior thereto defendant's street supervisor covered the floor of the bridge with dirt; and that, though repeatedly notified of its unsafe condition, he failed to repair it—defendant, having thus assumed control over the bridge, was bound to use ordinary diligence to keep it in a reasonably safe condition.

2. SAME—QUESTIONS FOR JURY.—Where plaintiff's horse, becoming frightened by reason of the defective condition of a bridge, backed the vehicle in which plaintiff was driving off the bridge, whereby plaintiff, without fault or negligence on his part, sustained injuries to his person and property, the question of defendant's negligence was for the jury.[1]

3. SAME—FILING CLAIM—STATUTORY PROVISIONS—LIMITING AMOUNT OF RECOVERY.—Under Revised Statutes 1898, section 312, providing that all claims against a city for damages or injury arising from the defective condition of any street or bridge, or from the negligence of the city authorities in respect thereto, shall, within ninety days after the happening of the injury or damage, be presented to the city in writing, signed by the claimant, describing the time, place, cause, and extent of the damage or injury, and that no action shall be maintained against the city unless it appears that the claim on which it was based was presented to the council, and that the council did not within ninety days thereafter audit and allow the same, the mere fact that a claimant for damages for injuries resulting from the defective condition of a bridge demands a less sum than he is entitled to recover does not, on rejection of his claim, preclude him from recovering by action his actual damages though they exceed the amount of his claim on file.

---

[1] Thomas v. Springville, 9 Utah, 426, 35 Pac. 503.

(Decided June 3, 1905.)

APPEAL from District Court, Salt Lake County; S. W. Stewart, Judge.

Action by John Mackay against Salt Lake City, a municipal corporation. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

C. C. Dey, W. H. Bramel, and D. O. Willey for appellant.

Thomas & Maycock for respondent.

### APPELLANT'S POINTS.

The first question to be considered is whether or not the city is liable for the condition of a way not situate within the municipality proper. The undisputed evidence shows that the place in question is anywhere from three to five miles from the business portion of the city. There are no streets opened up out there. Even boom-time plats were never opened up. This question is directly raised, with others, by defendant's first request. But returning to the point here made. This court has decided several times that land situated as the land surrounding this bridge is cannot be taxed for municipal purposes. (*Kaysville v. Ellison,* 18 Utah 163; *Ellison v. Linford,* 7 Utah 166; *Territory v. Daniels,* 6 Utah 288.)

There is absolutely no evidence showing or tending to show that the city owns or is responsible for the bridge in question. The road is shown by the undisputed evidence to be on a county road. The duty of caring for and maintaining a county road or bridge thereon, whether the same lies within the limits of a city or not, rests upon the county by statute. (Subdivision 24 of section 511, R. S. 1898; Subdivision 6 of section 1134, R. S. 1898.) When public highways extend through a city or town they shall conform to the city grades and municipal regulations. (R. S. 1898, sec. 1121.)

The words "highway" and "road" include public bridges and may be held equivalent to the words "county way," "county road," "common road" and "state road." (Subdivision 15, section 2498, R. S. 1898.) All county roads once established continue to exist until abandoned or closed by competent authority. (R. S. 1898, sec. 1116.) No user of that road or bridge by the city or city population has been shown. No dedication, no purchase, no change of ownership. It has been shown to be a county road within the city limits, and as such it was under the control and maintenance of the county. (Subdivision 6, sec. 1134, R. S. 1898; Subdivision 24, sec 511, R. S. 1898.) The above provisions make it plain that a county road may run through a city and not be a city street. Cities are liable only for defects in their own streets, and not for defects in county roads. (R. S. 1898, sec. 312.)

RESPONDENT'S POINTS.

It is unfortunate for defendants that the case of *Kaysville v. Ellison* 18 Utah 163, on which they rely, has been overruled by this honorable court. (*Kimball v. City of Grantsville,* 57 Pac. 1.) And as *Ellison v. Linford,* 7 Utah 166, and *Territory v. Daniels,* 6 Utah 288, are made the basis of the decision in *Kaysville v. Ellison,* supra, they too, are overruled, and counsel's conclusions are in the air without the support of authority or principle. The case overruling defendant's authority was one in which the lands on which the tax in controversy in the case was levied, were far out from the platted and built-up portions of the city, and it was held on principle, sound reason and authority, that all the property within the corporate limits of a city may be taxed. But as if to emphasize the groundlessness of counsels' argument, we find in 15 A. & E. Ency. of Law (2 Ed.), p. 428, that, "The fact that the total extent of the highways in the municipality is very large, does not affect the obligation to keep them free from defects," and this authority cites *Lindsay v. Des Moines,* 68 Iowa 368, and *Lincoln v. Smith,* 28 Neb. 762, in both of which it is held error to instruct the jury that the

extent of walks in a city which have to be looked after may be considered by the jury.

Taking into account the presumption of the city's control and responsibility from the fact of said bridge's being within the city limits, we believe, it is only fair to say that the proof of the city's control and responsibility and consequent liability becomes absolutely conclusive. Now to cite authority for said presumption last named. (15 Am. and Eng. Ency. of Law (2 Ed.), 426; *Almand v. St. Ry. Co.,* 108 Ga. 417.)

There are many cases holding that in the absence of express statute or act imposing the duty and declaring the liability upon the county municipal corporations proper having the power ordinarily conferred upon them respecting bridges, streets and sidewalks within their limits owe to the public the duty to keep them in safe condition and are liable for injuries resulting from their neglect therein. (*City of Endora v. Miller,* 30 Kan. 494; *City of Rosedale v. Golding,* 55 Kan. 167; 5 Cyc. 1081-2.)

"Where a bridge consisted of several spans, one of which fell while plaintiff was crossing it, held that the attention of the jury should not be limited to the particular part which fell, but that the condition of the entire bridge should be considered." (*Hughes v. County of Muscatine,* 44 Iowa 672; Snyder v. City of Albion, 113 Mich. 275.)

The decayed condition of the timbers in other parts of the bridge than that which collapsed may be shown on ground of notice. (*Woodbury v. Owasso,* 64 Mich. 239; Elliot on Roads and Streets (2 Ed.), sec. 628; see also 5 Cyc. 1114.)

As said in *Minick v. City of Troy,* 19 Hun 253, the purpose of a claim is "to have the facts and circumstances attending the demand for compensation submitted to the city authorities before suit should be commenced, to the end that its justice might be determined, and, if well grounded, that compensation might be made without the expense of a suit at law. The mere fact that damages were placed at different sums in the claim presented and in the suit did not make the claim for compensation in any respect different, both resting on the same facts and circumstances." (20 Am. and Eng.

Ency. of Law [2 Ed.], p. 1233; *City of Wyandotte v. White,* 13 Kan. star page 191; *City of Salina v. Kerr,* 7 Kan. App. 223; *City of Hutchinson v. Van Cleve,* 7 Kan. App. 676; *Reed v. City of New York,* 97 N. Y. 620.)

STATEMENT OF FACTS:

Plaintiff brought this action against Salt Lake City, a municipal coropration, to recover damages done to certain personal property belonging to plaintiff, and for personal injuries suffered by himself, all of which he alleges was caused by the negligence of defendant city in failing to keep in proper repair a certain bridge on the Redwood Road, and which is situated within the corporate limits of said city, and spans or crosses a stream of water about one foot in depth, known as the "Surplus Canal." The facts, as shown by the record, are substantially as follows: The record shows that the Redwood Road, on which the bridge in question is situated, runs north and south and within the municipal boundaries of Salt Lake City but a considerable distance west from the inhabited portion thereof. That part of the municipality through which the road traverses and in which the bridge is situated has been platted into lots, and streets laid out; but the lots have not been improved, nor the streets opened up. This bridge, which is one hundred and fifty feet in length and sixteen feet in width between the railings, was at the time the accident occurred, and for a considerable length of time prior thereto had been, under the supervision and control of the city; but just how long the record does not show. The bridge at the time of the accident was, and for five weeks prior thereto had been, out of repair, of which the city had notice. The plank which formed the roadbed or floor of the bridge were badly worn, and the cracks between them were from one to three inches wide, and the railings on the sides of the bridge were loose and insecure. The bridge had been covered with dirt from seven to ten inches in depth by the street supervisor of defendant city. At the time plaintiff was injured much of the dirt which had been placed on

the bridge and sifted through the cracks between the plank, leaving small piles of dirt at different places on the bridge. And the evidence shows that when teams (horses) were driven over the bridge they frequently became frightened by the falling of the dirt through the apertures between the plank and the reflection of the water in the canal through these same cracks. The city road supervisor had on several occasions immediately preceding the accident been notified of the unsafe condition of the bridge, but had failed and neglected to make the necessary repairs. On October 2, 1902, plaintiff, who was seventy years of age, was going home along this, the Redwood Road, from the State Fair, in a phaeton drawn by a gentle horse. While in the act of crossing the bridge in question, the horse became frightened at the piles of dirt . thereon and the sifting of the dirt through the apertures between the plank, which resulted in the horse backing the phaeton, with the plaintiff therein, off the bridge, carrying with them a part of the railing of the bridge into the canal, the bottom of which was eight or nine feet below the floor of the bridge. The horse went off the bridge with the phaeton, and fell on the plaintiff, who was thereby rendered unconscious for a short time. Plaintiff's back was hurt, his face was bruised, a leg and foot badly cut, and he was otherwise severely injured. Besides the personal injuries thus received by plaintiff, his phaeton, harness, a lap robe, and a suit of clothes, aggregating in value $246, were completely destroyed. It appears from the record that the injuries to plaintiff's leg and back are permanent in character, and have nearly incapacitated him from working. The facts in the case over which there is no conflict in the evidence may be summarized as follows: First, the bridge in question is within the corporate limits of Salt Lake City; second, the city, at the time of the accident, was, and for a long time prior thereto had been, asserting control over the bridge; third, the bridge at the time the accident happened, was, and for a long time prior thereto had been, out of repair, of which the city for five weeks had actual notice, and, fourth, the plaintiff was injured, and his property destroyed, without fault

or negligence on his part. The plaintiff, within the time
provided by law, filed a claim against the municipality for
damages aggregating $1,520 with the city recorder, which
claim was rejected and disallowed. A trial was had, which
resulted in a verdict for plaintiff in the sum of $1,980. From
the verdict and judgment entered, defendant prosecutes this
appeal.

McCARTY, J. (after stating the facts.)

The first contention made by appellant is that it cannot
be held liable for the damages suffered by respondent, be-
cause the accident occurred on a road which is situated out-
side of, and a considerable distance from, the inhabited por-
tion of the municipality. The evidence is undisputed that
the city at and prior to the time of the accident exercised
control over the bridge in question, and had on several occa-
sions made repairs thereon. Bert Pratt, who was at the time
"bridge carpenter" for the city, was called as a witness, and
testified that the planks which formed the floor of the bridge
were placed there by him. He also testified that a few days
prior to the accident he, as bridge carpenter, inspected and
made an examination of the woodwork of the structure. It
also appears from the record that the street supervisor of the
city, long before respondent was hurt, covered the bridge with
the dirt referred to in the foregoing statement of facts, and
that prior to the accident he was repeatedly notified of the
unsafe condition of the bridge, but failed to make the neces-
sary repairs. The city having thus assumed control, and in
effect, ownership, of the bridge, was legally bound to use or-
dinary diligence to keep it in a reasonably safe condition. In
Elliott on Roads and Streets (2 Ed.), section 59, the rule is
stated as follows:

"When a city takes charge of a bridge, and as-
serts control and ownership over it, there is suffi-
cient reason for holding it bound to keep the bridge
in repair."

In 15 Am. & Eng. Ency. Law (2 Ed.), 428 it is said:

> "The duty of a municipality as regards a high-
> way is, it seems, affected by the amount of use of
> such highway; but this does not affect its duty to
> keep every highway within its limits in a reasona-
> bly safe condition."

Under the circumstances of this case, the question of neg-
ligence on the part of the city was one for the jury to deter-
mine. (*Thomas v. Springfield,* 9 Utah 426, 35 Pac. 503.)

The next question presented by this appeal is, did plain-
tiff, by filing a claim for $1,520 only, with the city recorder,
for damages, limit his right of recovery to that amount? Ap-
pellant insists that plaintiff, having filed his claim against
the city for the sum mentioned, is precluded from recover-
ing a greater amount, and that the court erred in failing to
so instruct the jury, the appellant having presented a request
to that effect. Section 312, Revised Statutes 1898, provides
as far as material here, that

> "All claims against a city or town for damages
> or injury alleged to have arisen from the defec-
> tive, unsafe, dangerous, or obstructed condition of
> any street,   .   .   .   or bridge of such city or
> town, or from the negligence of the city or town
> authorities in respect to any such street,   .   .   .
> or bridge, shall, within ninety days after the hap-
> pening of such injury or damage, be presented to
> the city,   .   .   .   in writing signed by the claim-
> ant or some authorized person, and properly ver-
> ified, describing the time, place, cause and extent
> of the damage or injury, and no action shall be
> maintained against any city or town   .   .   .   un-
> less it appears that the claim for which the action
> was brought was presented to the council,   .   .   .
> and that the council   .   .   .   did not, within
> ninety days thereafter, audit and allow the same."

It is evident that the purpose of the statute is to enable the municipality against which a claim of this character is made to examine the highway, bridge, or other place where the injury or damage is alleged to have been sustained by the claimant, and thereby determine the nature and character of the defect in the highway, and the extent of the damages or injuries sustained by the claimant; and if, upon such investigation, the claim is found to be meritorious, and one for which the city is liable, to settle the claim, and thus protect itself from unnecessary costs. And, on the other hand, if the demand is found to be without merit, the city will be better able to secure evidence and prepare its defense than if the matter were deferred until after the alleged defect in the highway had been repaired, or its condition otherwise changed. Besides, long delay in presenting a claim would make it difficult, and in many cases impossible, for the municipality to procure witnesses and secure the evidence which it might otherwise do if the claim were presented soon after the alleged damages or injuries are sustained. The mere fact that a claimant in cases of this kind includes in his demand a less amount than he is entitled to recover does not, upon his claim being rejected, preclude him from bringing suit and recovering for the damages and injuries actually sustained, even though they exceed the amount of his claim on file. This rule is in accordance with the great weight of authority. In 20 Am. & Eng. Ency. Law (2 Ed.), 1233, it is said:

"It has been held that the plaintiff's claim presented should specifically state the amount demanded, though this is not invariably the case. The plaintiff may, however, subsequently sue for and recover more than the amount of his original claim, or he may institute suit for less than the amount demanded on the same facts as set forth in his claim." (*Minick v. City of Troy,* 19 Hun 253; *Reed v. City of New York,* 97 N. Y. 620; *City of Salina v. Kerr,* 7 Kan. App. 223, 52 Pac. 901; *City of Wyandotte v. White,* 13 Kan. 191.)

The record shows that the claim in this case was filed with the city recorder six weeks after plaintiff was injured, and it was more than five months thereafter when it was rejected and disallowed by the city. In cases like this it might often happen that the full extent of the injuries received could not be accurately determined within the time in which the claims must be filed as required by law, and it might develop long afterwards that the injuries were of a much more serious character than they appeared to be when received. So, in this case, it appears from the record that the injuries to plaintiff's leg and back are permanent in character, and which, at the time he filed his claim, he might well have believed were only temporary, and from which he would, in the course of time, recover. In the case of *Noble v. Portsmouth,* 67 N. H. 183, 30 Atl. 419, this same question was involved, and the court, in the course of the opinion, says:

> "But if the town declines to settle there is no reason why the plaintiff, who has innocently underestimated his claim, should not recover actual damages. His injury, which at first may seem slight, may prove to be serious. Within the brief period for filing the statement the nature and extent of his injuries may not have become developed. Time may demonstrate he was honestly mistaken, and the law does not visit upon him consequences which result from no fault of his."

There are several other errors assigned, but, as they are without merit, we do not deem it necessary to discuss them.

We find no reversible error in the record. The judgment is therefore affirmed, with costs.

BARTCH, C. J., and STRAUP, J., concur.