## BERGER v. SALT LAKE CITY.

No. 3458.    Decided July 1, 1920.    (190 Pac. 233.)

1. MUNICIPAL CORPORATIONS—LEGISLATURE MAY IMPOSE CONDITIONS
   ON RIGHT TO SUE CITIES AND TOWNS.  The Legislature may
   impose such conditions on the right to sue municipalities as
   in its judgment may seem wise and proper.[1]

2. MUNICIPAL CORPORATIONS—NO RECOVERY IN EXCESS OF CLAIM
   IN NOTICE TO CITY WITHOUT PLEADING EXCUSE.  Plaintiff suing
   city could not recover for permanent injuries an amount in
   excess of that claimed in notice to city, under Comp. Laws
   1917, sections 816, 817, not indicating that she was perma-
   nently injured, in absence of allegations and proof of an
   excuse for the failure to allege injuries to be permanent and
   to claim larger amount.[2]

3. MUNICIPAL CORPORATIONS—PLEADING HELD TO AUTHORIZE RECOV-
   ERY OF EXCESS OF THAT CLAIMED IN NOTICE.  Claimant against
   city by alleging and proving that he did not know, and could
   not in exercise of reasonable diligence have discovered, the
   serious consequences of the injury within the thirty days
   in which he was required to give the city notice, under Comp.
   Laws 1917, sections 816, 817, and that failure to fully describe
   consequences at such time was through no fault or negligence
   on his part, may recover an amount in excess of that claimed
   in notice in view of section 6619.

---

[1] *Sweet* v. *Salt Lake City,* 43 Utah, 306, 134 Pac. 1167; *Dahl* v.
*Salt Lake City,* 45 Utah, 544, 147 Pac. 622.

[2] *Mackay* v. *Salt Lake City,* 29 Utah, 247, 81 Pac. 81, 4 Ann. Cas.
824; *Connor* v. *Salt Lake City,* 28 Utah, 248, 78 Pac. 479; *Sweet*
v. *Salt Lake City,* 43 Utah, 306, 134 Pac. 1167.

4.   MUNICIPAL CORPORATIONS—NOT LIABLE FOR ORDINARY ACCUMU-
     LATIONS OF SNOW AND ICE ON SIDEWALK.   A city is not liable
     for injuries from ordinary accumulations of snow and ice on
     sidewalk, the failure to remove such accumulations not consti-
     tuting negligence.

5.   NEGLIGENCE—"NEGLIGENCE" IN GENERAL DEFINED.   Negligence
     consists in doing or omitting to do any act which an ordinarily
     prudent and careful person under the same circumstances
     would do or omit to do, but not in doing or omitting to do an
     act which can only be done or prevented by the exercise of
     extraordinary exertion or care or by the expenditure of extra-
     ordinary sums of money.

6.   MUNICIPAL CORPORATIONS—LIABLE FOR INJURIES FROM SNOW AND
     ICE PLACED ON STREETS OR SIDEWALKS.   Cities and towns are
     liable for injuries from snow and ice placed on streets or
     sidewalks by their own acts.

Appeal from District Court, Third District, Salt Lake
County; *J. Louis Brown,* Judge.

Action by Emma S. Berger against Salt Lake City. Judg-
ment for plaintiff, and defendant appeals.

REVERSED.

*Wm. H. Folland,* City Atty., and *H. H. Smith,* Asst. City
Atty., both of Salt Lake City, for appellant.

*Frank B. Scott* and *Willard Hanson,* both of Salt Lake
City, for respondent.

FRICK, J.

The plaintiff obtained judgment against Salt Lake City
for damages for personal injuries which she sustained by
falling on one of the sidewalks of said city, and the city
appeals.

The plaintiff, in her third amended complaint, after stat-
ing the necessary matters of inducement, alleged that during

the winter of 1916-17 "large quantities of snow and sleet had fallen and banked upon the said sidewalk, and had partially melted, and had become packed and frozen in such a manner as to leave an uneven surface, and to lay in ridges in rounded form and bumps, so that said sidewalk was slippery and dangerous to pedestrians, * * * and by reason of pedestrians tramping over the same, and by reason of the freezing and thawing of the said snow and sleet, the surface became rough and full of ridges and depressions which were several inches in depth"; that the appellant had negligently failed to remove said snow and ice from said sidewalk, and had failed "to exercise reasonable care to keep said sidewalk in a reasonably safe condition for pedestrians"; that on the 15th day of January, 1917, while walking on said sidewalk, "and while in the exercise of due care and caution," the plaintiff, "by reason of said unevenness and roughness of said snow, ice, and sleet," slipped and fell and fractured both bones of her left arm; that on January 25, 1917, plaintiff filed her verified claim against said city, "stating the particular time at which the injury happened, and designating and describing the particular place in which it occurred, and also particularly describing the cause and circumstances of said injury and damages, and so far as known to claimant the name of the person, firm, or corporation who created, or brought about or maintained, the defect, obstruction, and condition causing such accident and injury, and also stating the nature and probable extent of such injury, and the amount of damages claimed on account of same"; that said claim was disallowed; that by reason of such injuries plaintiff had sustained damages in the sum of $5,000, for which she demanded judgment.

The appellant filed its answer to the complaint, in which, after admitting the matters of inducemtnt, and denying all negligence, it, as affirmative defenses, averred: (1) Contributory negligence; (2) that the injuries were caused by natural causes over which appellant had no control; and (3) that the plaintiff had not presented her claim for damages as provided by our statutes, stating the particulars.

A great many errors are assigned on the part of appellant, which are exhaustively argued in its brief. The first assignment we shall consider relates to the filing of plaintiff's claim for damages.

Our statute (Comp. Laws Utah 1917, section 816), which was in force when this action was commenced, so far as material here reads as follows:

"Every claim against an incorporated city or town for damages or injury alleged to have been caused by the defective, unsafe, dangerous, or obstructed condition of any street, alley, crosswalk, sidewalk, culvert, or bridge, * * * or from the negligence of the city or town authorities in respect to any such street, alley, crosswalk, sidewalk, culvert, or bridge shall, within *thirty days* after the happening of such injury or damage, be presented to the city council * * * in writing, signed by the claimant or by some person by claimant authorized to sign the same, and properly verified, stating the particular time at which the injury happened, *and designating and describing the particular place in which it occurred, and also particularly describing the cause and circumstances of the said injury or damages,* * * * *and also stating the nature and probable extent of such injury, and the amount of damages claimed on account of the same;* * * * and no action shall be maintained against any city or town for damages, or injury to person or property, unless it appears that the claim for which the action was brought was presented as aforesaid to the city council * * * and that such council * * * did not within ninety days thereafter audit and allow the same." (Italics ours.)

The succeeding section provides that unless the claim is presented to the city council "in the manner and within the time in section 816 specified" it shall be barred.

We call special attention to the parts that we have italicized, which, as will appear hereinafter, are very material, for the reason that certain decisions of this court are relied upon. At the time those decisions were rendered, however, the words in italics were not in the statute, but were thereafter inserted by amendment.

The particular question on this appeal respecting the statute arose as follows:

The plaintiff, within the time provided by statute, filed a claim duly verified, in words as follows:

"Salt Lake City, a Municipal Corporation, to Emma S. Berger, Dr.
  "Jan. 15, 1917.

"To broken left forearm suffered by the claimant by reason
of slipping and falling on sidewalk in front of 167 North Main
street, of which a Mr. Jensen was the occupant, Tuttle Bros.
agents, and Mr. W. E. Smelles.   Such falling was caused by the
dangerous condition of such sidewalk by reason of four inches of
ice and frozen snow being allowed to accumulate thereon, and
to remain on same for several weeks last past, contrary to the
provisions of the city ordinance in regard to the removal of snow
from sidewalks.   Both the radius and ulna bones being broken
completely off, and there being the possibility of it being six
weeks at least before the claimant will be able to use the arm
at all.   The accident happened about three or four o'clock in the
afternoon of January 15, 1917.   $1,000.00."

It will be observed that there is no claim or intimation that
the result or effects of the injury would be permanent, and
the amount claimed is limited to $1,000.   Notwithstanding
that fact, however, the court permitted the plaintiff to re-
cover upon the theory that the effects of the injury were
permanent, and also permitted her to claim the sum of $5,000
in her complaint, and allowed a recovery and entered judg-
ment for a sum in excess of $1,000.

Appellant's counsel, with much vigor, argue that under
our statute the injured claimant is limited in her recovery
to the amount specified in her claim.   Upon the other hand,
plaintiff's counsel contend that such is not the law, and in
support of their contention cite *Mackay* v. *Salt Lake City*,
29 Utah, 247, 81 Pac. 81, 4 Ann. Cas. 824, and *Connor* v.
*Salt Lake City*, 28 Utah, 248, 78 Pac. 479.

While it is true that in the Mackay Case it was held that
the plaintiff was not limited in his recovery to the amount
stated in his claim, yet it is also true that at the time the
injury arose in that case the statute did not require the
claimant to state the "amount of damages claimed."   After
that case was decided, however, the statute was amended so
as to require the claimant to state the amount of damages
that he claimed.   The changes in the statute since the Mackay
Case was decided are indicated by the italicized words.   It
would, therefore, be folly to contend that by the amendments

to the statute no change was intended or effectuated. The statute now requires the claimant to state the "amount of damages claimed." The change in the statute was no doubt effectuated for the express purpose of obviating the conclusion reached in the *Mackay* Case. The change having been made, it is our duty to give it effect. To that effect is the holding in a later case. *Sweet* v. *Salt Lake City,* 43 Utah, 306, 134 Pac. 1167.

While it is true that in the *Sweet* Case the question arose in a somewhat different form, yet the principle was the same there as it is here. In the *Sweet* Case the decision in the *Mackay* Case is referred to, and the changes in the statute are pointed out.

The decisions of this court (*Sweet* v. *Salt Lake City,* supra, and *Dahl* v. *Salt Lake City,* 45 Utah, 544, 147 Pac. 622) are in harmony with the overwhelming weight of authority, which is to the effect that it is within the power of the Legislature to impose such conditions upon the right to sue cities and towns, which are merely arms of the state government, as in its judgment may seem wise and proper, and that the conditions which are thus imposed are conditions precedent, and cannot be ignored either by the claimants or by the courts.

In determining the effect of a particular statute upon this subject it is of the utmost importance to keep in mind its terms and provisions. An examination of the cases will disclose that the terms of the statutes in the different states vary to a considerable extent, which fact is frequently overlooked by counsel in citing cases in support of their respective views. In many statutes it is not made essential to state the amount of damages claimed, and hence a failure to do so is not controlling. Under such statutes, if the amount be stated judgment may, nevertheless, be obtained in excess of the amount stated. There are statutes, however, like ours, in which it is provided that the amount of damages claimed shall be stated, and, where such is the case, the courts have held that the recovery must be limited to the amount stated, unless for good and sufficient cause an amendment to the

claim has been allowed to be filed. The statute of the state of Iowa is in effect like ours. In the case of *Marsh* v. *Benton County*, 75 Iowa, 469, 39 N. W. 713, it was held error to permit the plaintiff to recover an amount in excess of the amount claimed, although the judgment was based "on the ground that her injuries were much more serious than at first supposed." The court held that the amount stated in the claim controlled unless an amendment of the claim was first made and filed. The Iowa statute, like ours, provides that no action shall be brought or maintained unless a claim has been presented and payment demanded and the amount of damages claimed stated therein. The court, in the course of the opinion, says:

"Such amount must be stated, and the payment thereof refused, before an action can be maintained. If, after an action has been commenced, something occurs which the plaintiff believes entitles him to a larger amount, such claim must be presented to the board. * * * "

The Supreme Court of Iowa, in two later decisions, approved and followed the decision in the case just referred to, namely, *Van Camp* v. *City of Keokuk*, 130 Iowa, 716, 107 N. W. 933, and *Buchmeier* v. *City of Davenport*, 138 Iowa, 623, 116 N. W. 695. In a recent case from Montana (*Berry* v. *City of Helena* [Mont.] 182 Pac. 117) the Supreme Court held that the provisions of the statute must be complied with.

The court said: "It is not an answer to say that the city officials obtained correct information from other sources and were not misled. The only right which plaintiff can assert against the city is the right granted by statute. Compliance with the law on her part is a necessary prerequisite on her part to institute this action. * * * " To the same effect are *Walters* v. *City of Ottawa*, 240 Ill. 259, 88 N. E. 651; *MacMullen* v. *City of Middletown*, 187 N. Y. 37, 79 N. E. 863, 11 L. R. A. (N. S.) 391; and *Ridgeway* v. *City of Escanaba*, 154 Mich. 68, 117 N. W. 550. Numerous other cases could be cited to the same effect, but it is unnecessary to do so.

As pointed out, the plaintiff in this case stated the amount claimed by her, but after doing so was permitted, without

showing any cause or reason therefor, to recover an amount in excess of the amount claimed. In her claim she did not indicate that she was permanently injured, nor did she claim anything in excess of $1,000. In her complaint, however, without alleging any cause or excuse for so doing, she alleged that she had sustained peremnant injuries, and that she had suffered damages in the sum of $5,000; and, notwithstanding the statement contained in her claim and the objections of the appellant, the court, without pleadings or proof of any cause or excuse for the departure, permitted her to recover for permanent injuries an amount in excess of what she had stated in her claim. The court thus in effect ignored the legislative requirement that the amount of damages must be stated in the claim. We say ignored the requirement advisedly, for the reason that if the amount stated in the claim may be disregarded without proper cause or excuse, then there is no reason whatever for requiring the amount to be stated in a claim. The provision in the statute to that effect is therefore treated as a nullity. That amounts to a judicial repeal of an important provision of the statute.

We are of the opinion that, as suggested in the case of *Sweet* v. *Salt Lake City*, supra, namely that in case the claimant, within the thirty days given him by the statute, is unable, or, in the exercise of reasonable diligence, does not, discover and know, and hence cannot state, all of the consequences of the injury, and that he thereafter discovers that the natural and proximate consequences of the injuries stated in his claim have developed to be more serious than was known at the time he filed the same, he should not be prevented from recovering for such consequences, provided he fully and fairly pleads and proves the facts, and fully and fairly states the reasons why he could not at the time state all the consequences of the injuries described · in his complaint, and also states in what particulars the consequences are more serious, and that they have not been made so through his negligence or fault. The city will thus be given ample opportunity to inquire into the reasous advanced by the claimant, and will have the same

opportunity to investigate the condition of the injuries described in the claim as it had when the claim was first filed, and can in no way be legally prejudiced in the premises, while, upon the other hand no injustices will result to the claimant. Moreover, the provisions of the statute will thus be observed and complied with in that the amount claimed will control, unless for the reason stated the consequences have developed to be more serious than they were when the claim was filed, and for that reason could not be stated within the time required by the statute. The amendment to the pleadings suggested, if allowed, is permitted in the interest of justice and for good cause, and does no violence to any provision of the statute, but is in harmony with our Comp. Laws Utah 1917, section 6619.

There is nothing to the contrary in any of the cases, not even in those from Iowa. Counsel for plaintiff have, however, cited some cases which they contend permit a recovery in excess of the amount claimed without showing any cause or excuse therefor. Among others they cite five decisions from the Supreme Court of Washington. Counsel have evidently overlooked the fact that after all of those cases were decided the Washington statute was amended, and that the Supreme Court of Washington thereafter followed the decisions we have hereinbefore referred to.

We think the rule herein laid down is practical, and if properly applied will reflect justice in all cases without in any way impairing either the purpose or the spirit of the statute.

We are of the opinion, therefore, that in view of the statement contained in the claim as filed, and in the absence of the suggested averments in the complaint, the court erred in permitting plaintiff to recover an amount in excess of the amount stated in the claim as filed.

It is next contended that the court erred in overruling appellant's motion for a nonsuit; that the court erred in overruling appellant's motion for a new trial; and that the evidence, for various reasons stated, does not sustain the verdict

and judgment. These assignments may be considered together.

The evidence on the part of the plaintiff is to the effect that on Christmas Day preceding the accident there was an unusually heavy fall of snow in Salt Lake City; that much snow had fallen during the month of December, 1916, and that some more fell in January, 1917, before the accident; that the city had attempted to clear the sidewalks, including the one in question, with a snowplow; that the pedestrians had, however, tramped down the snow, and the snowplow did not clear the walks; that the accident occurred in front of a vacant house, at which place snow to a considerable depth was left on the sidewalk for the reason that the snow had been tramped down and the snowplow had passed over it; that the surface of the snow at the point in question was rough and uneven. One of the plaintiff's witnesses testified that she had passed over the place many times; that the elevations and depressions were entirely due to the "footprints" of the pedestrians; that it was a very cold winter, with "unusual snowstorms"; that people had walked over the entire width of the sidewalk, and that it was rough from "footprints." The plaintiff, quoting from the bill of exceptions, testified that the surface was "uneven and slippery; and as I was going over further toward the middle of the sidewalk I fell"; that there were "large and small footprints, and seemed to have slanted sidewise, and the larger ones—they were between two and four inches deep." On cross-examination she said, "Well, I looked at the sidewalk, and it was all covered with snow and rough with footprints, and when the snow had been thawed the people had tramped it—made it very rough." She further testified, in answer to a certain question put to her by appellant's counsel: "No, it wasn't exactly a ridge; it was the slant on which my foot slipped; it wasn't what you might call a ridge; it was a little slanting, and with it being frozen ice and snow it was very difficult to walk over." There is much more evidence to the same effect.

On the part of the defendant (and we only refer to these facts because they are not disputed or contradicted in any

way) it was shown that during the month of December, 1916, over thirty-one inches of snow had fallen, and that there were slight falls of snow during the first fifteen days of January, 1917; that the weather was cold so that the highest temperature during the first fifteen days of January was on the 5th, when the temperature rose to thirty-eight degrees, and that after the 6th, and up to the 15th day of January, it was always below the freezing point; that at the time of the accident there were 396.97 miles of paved, that is, concrete or cement, sidewalks in Salt Lake City, and approximately 1,000 miles, inclusive, of the paved walks; that the only way the city had of clearing the walks outside of the business section was by means of snowplows, which were constructed of wood in triangular form, and in passing over the walks, when propelled by a horse, would make a path about four feet wide. In case the snow was tramped down, however, the snowplows could not clear the snow down to the cement walks, but would clear a path for the pedestrians to walk in. It was also stipulated that at the point of the accident there was a grade or incline of eight and one-half per cent. in the walk, but plaintiff's counsel concede that it was not claimed that the incline was improper; nor was it contended that the sidewalk itself was not in good condition.

Upon substantially the foregoing facts the court submitted the case to the jury upon the usual instructions respecting the duty of cities to keep their streets and sidewalks in a reasonably safe condition, etc.

The question to be determined is, Do the ordinary rules of law respecting the duty of cities and towns to exercise ordinary care and diligence to maintain the streets and sidewalks in a reasonably safe condition and free from dangerous obstructions apply to the natural and ordinary accumulations of snow and ice?

The question, in the form that it is presented by this record, is an open one in this jurisdiction. It may be conceded that there are some decisions of courts of last resort where it was held that facts like those in this case respecting the condition of the sidewalk, independently of other considera-

tions, were sufficient to take the facts to the jury. The difficulty with all of those cases is that in none of them is a clear and definite rule or test stated which should govern either court or jury in determining what constitutes negligence in not removing snow and ice which naturally falls and accumulates on the sidewalks. In all of them it is stated, however, that merely because snow has fallen, and snow and ice have accumulated on the sidewalks, and that thereby the walks have become rough and slippery, does not give rise to a cause of action to one who is injured in passing over them. In those cases it is also held that the accumulations must amount to ''dangerous obstructions,'' but no rule or test is laid down with respect to what a jury may find to constitute such a dangerous obstruction. The whole question is therefore left to the whim or caprice of the jury, which may on one day find certain accumulations to be dangerous obstructions and on the next day may find one equally as bad or worse not to constitute a dangerous obstruction. The cases, therefore, establish neither a rule nor a guide, and require an extraordinary amount of care to be exercised on the part of cities and towns in our climate, and hence should not be followed. There are, however, well-considered cases in which the courts have laid down some principles that if followed will lead to reasonable, just, and fair results. In Michigan it has always been held that in the absence of a special statute, cities are not liable for injuries resulting from the usual and natural accumulations of snow and ice on streets or sidewalks. The rule was first stated in the case of *McKellar* v. *Detroit,* 57 Mich. 158, 23 N. W. 621, 58 Am. Rep. 357, and was followed in *Rolf* v. *City of Greenville,* 102 Mich. 544, 61 N. W. 3. To the same effect is *Jefferson* v. *City of Sault Ste. Marie,* 166 Mich. 340, 130 N. W. 610.

*Harrington* v. *City of Buffalo,* 121 N. Y. 147, is, in many respects, a parallel case with the one at bar. Recovery was, however, disallowed as a matter of law. In *Hatch* v. *City of Elmira,* 142 App. Div. 174, 126 N. Y. Supp. 863, the surface of the sidewalk was described as ''humpy'' and ''lumpy,'' and that it was uneven, rough and slippery, and made so

by the people tramping down the snow. Recovery was denied as a matter of law. To the same effect is *Hyer* v. *Janesville*, 101 Wis. 371, 77 N. W. 729.

In *Dapper* v. *City of Milwaukee*, 107 Wis. 88, 82 N. W. 725, the decision is correctly reflected in the first headnote, wherein it is said:

"In the absence of structural defects which combine with the action of the elements in causing accumulations of ice and snow on a sidewalk, the condition of a sidewalk crossing an alley, which has become uneven by falling snow and the melting and freezing of the same while used by persons and teams, does not constitute an actionable defect."

In the opinion it appears that the sidewalk was substantially in the same condition as in the case at bar. In that case it is also pointed out under what circumstances and conditions cities may become liable for dangerous obstructions on sidewalks which are due to the accumulations of ice and snow.

In *Norwalk* v. *Tuttle*, 73 Ohio St. 242, 76 N. E. 617, the Supreme Court of Ohio gave the matter very careful consideration. It is there held that a city is not liable for the natural accumulations of ice and snow upon the sidewalks, but in case such accumulations are made unsafe or dangerous by reason of ice or snow which is placed there, or caused to be there, by the acts of the city, it then is responsible for such conditions. In the course of the opinion it is said:

"Recurrence to a very elementary proposition seems necessary. The proposition is that in cases of this character there is no liability where there has been no default in duty. No default of the municipality appears in cases of this character when the peril is not due to defective construction or to any other act of the city contributing to or causing the dangerous condition of the street, but where that condition is due solely to the action of the elements. In a climate where the winter brings frequently recurring storms of snow and rain and sudden and extreme changes in temperature, these dangerous conditions appear with a frequency and suddenness which defy prevention, and, usually, correction. Ordinarily they appear before correction would be practicable by any provision which the city might reasonably be expected to make. It is within common observation that without the presence of snow or rain, from the mere alternations of heat and cold operating

upon the frozen earth beneath the walk, there result dangerous conditions of pavements which it would not be possible to prevent or correct. To hold that a liability results from these actions of the elements would be the affirmance of a duty which it would often be impossible, and ordinarily impracticable, for a city to perform."

See, also, *Chase* v. *City of Cleveland*, 44 Ohio St. 505, 9 N. E. 225, 58 Am. Rep. 843, where the question is carefully considered, and where it is held that the cities cannot be held liable for injuries caused by natural accumulations of snow and ice.

The Supreme Court of Missouri has also given the question careful attention. In *Reedy* v. *St. Louis Brewing Ass'n*, 161 Mo. 536, 61 S. W. 862, 53 L. R. A. 805, it is said:

"Running through all the cases to which our attention has been called on this subject, we find the general proposition that ice or snow upon a sidewalk or in a street is not to be classed with dangerous obstructions, such as a city is required to remove. It would be more accurate to say that it is a dangerous obstruction, but that it is excepted from the category of obstructions for which the city is liable upon the ground of the impracticability of the city's removing it. There are, for example, in this city many hundreds of miles of sidewalks upon which snow falls and ice forms when the weather suits, and immediately upon its fall the snow is beaten down by the feet of thousands walking over it. To some extent the sidewalks and streets may be and are cleared of such obstruction, but to remove it entirely or to a degree that would render it not dangerous is impracticable, and therefore not embraced in the law's reasonable requirements. There is another reason for making snow or ice, on the sidewalks and in the streets, an exception to that dangerous condition for which a city is liable; that is, when that condition exists generally, it is obvious and every one is on his guard. Any pedestrian on the sidewalk or traveler in the street is warned by all his surroundings that ice and snow abound, and consequently danger of slipping and falling is to be apprehended at every step. The law is reasonable in this as in all things."

That case is approved and followed in the later case of *Vonkey* v. *St. Louis*, 219 Mo. 37, 117 S. W. 733.

Substantially the same rule is laid down by the court in *Albritton* v. *Kansas City*, 192 Mo. App. 574, 188 S. W. 239. In that case it is pointed out that the ordinary rules apply-

ing to defects in or obstructions on sidewalks do not apply to the ordinary and natural accumulations of snow and ice.

In *Wilson* v. *City of Idaho Falls,* 17 Idaho, 425, 105 Pac. 1057, the rule adopted by the Supreme Court of Idaho is stated in the first headnote as follows:

"In an action against a city for injuries alleged to have been caused by a slippery sidewalk occasioned by the melting and freezing of snow, the travel over the sidewalk and the making and freezing of the ice and snow thereon having left the sidewalk in a rough and slippery condition, *held* that the evidence is not sufficient to show the negligence of the city or its liability."

In *City of Aurora* v. *Park,* 12 Ill. App. 122, substantially the same doctrine is laid down.

Nothing could be accomplished by further quoting from the decided cases. It is, however, important to keep in mind the fact that in some states there are statutes requiring cities and towns to remove snow and ice from sidewalks. In some states such provisions are incorporated into the city charters. In most of these states, however, the statutes require that actual notice for a specified time be given to the city of the condition of the sidewalk before liability attaches. See *Hatch* v. *City of Elmira,* supra. Such is now the law in the state of Rhode Island, having been changed after the Supreme Court in that state had applied the ordinary rule. Such a law is just, fair, and rational. In the case at bar the city was found negligent for the existence of a condition which the undisputed evidence showed was practically impossible to avoid. If the cities and towns of this mountain country are to be charged with being negligent for not removing the natural accumulations of snow and ice from sidewalks, then negligence may be found to exist although the acts or omissions which are charged as negligent cannot by any reasonable effort be avoided. In this mountain country, where the cities and towns are located at an altitude of from 4,000 to 7,000 feet, and are, in some instances at least, located upon more or less steep inclines, and where the snowfall at times is great and continuous for a considerable period of time, and where the noonday sun, whose rays directly fall upon the southerly

slopes and melt the snow and ice, causing water to flow over the sidewalks, which will freeze in the night and will make the walks rough and slippery, it is utterly impossible to keep all of the sidewalks free from either ice or snow. Take Salt Lake City as an example. With its concrete sidewalks covering a distance of almost 400 miles, with practically 600 miles more of open .walks, the task to keep the walks free from snow and ice is exceedingly great. Moreover, it is a fact known to all that the people pass over the sidewalks constantly while the snow is falling, and as a general rule it is wet or moist when it falls, and while in that condition is being tramped down on the sidewalks. When thereafter snowplows come along they cannot remove the tramped down snow, and when it falls, as is usually the case, it freezes during the night, and the only way to remove the tramped down, frozen, and hard snow and ice is by means of pick and shovel, and, as all of us have experienced, that is a most laborious task. It should also be remembered that the snow falls upon every part of the 400 miles of sidewalk at the same time, and very many miles may be in a tramped down condition by the thousands of pedestrians who pass to and fro over it in going from and returning to their homes. To keep those sidewalks free from such accumulations of ice and snow as are described in this record is therefore a most extraordinary task. To characterize as negligent a failure of the cities and towns of this state to keep the sidewalks free from the natural accumulations or ice and snow under circumstances which, as every one knows, are here stated entirely within the bounds of truth, is contrary to both reason and common sense.

Negligence, in the eye of the law, consists in doing or omitting to do any act which an ordinarily prudent and careful person under the same circumstances would do or omit to do. The law does not condemn an act or omission as negligent which can only be done or prevented by the exercise of extraordinary exertion or care or by the expenditure of extraordinary sums of money. The law, as

stated by the Supreme Court of Missouri in the case quoted from, requires only that which is reasonable.

In view of what has been said, how can it successfully be contended that the officials of Salt Lake City were culpably negligent (and that the taxpayers should respond in damages) for not accomplishing what it was unreasonable to expect? In this connection it may not be out of place to observe that it is reasonably clear that our statute under which cities and towns are required to exercise ordinary care to maintain the streets and sidewalks in a reasonably safe condition, and under which, in case a claim is filed as required by the statute, the cities and towns may be held liable for negligently failing to maintain the streets and sidewalks in such condition, was not intended to apply to the ordinary and natural accumulations of ice and snow. Under the statute the claim, together with the statements required therein, may be filed at any time before the expiration of thirty days after the injury which is complained of. This implies that the condition in the street or sidewalk of which complaint is made is not entirely ephemeral, and may be seen and examined into even after the thirty days have expired. This is not possible with the natural accumulations of snow and ice. The condition of the snow and ice, as all know, may, and most always does, change from day to day, and certainly changes in a very few days. Where the accident occurs, however, by reason of the alleged accumulations of snow and ice, and a claim is filed at or near the end of thirty days, the condition that existed at the time of the injury, and which was the alleged cause thereof, would have disappeared, and it would be useless for any city officer to make an examination of the place to ascertain the condition of the sidewalk. The statute, therefore, was not intended to meet such a condition. For that reason the statutes which require actual notice to the city, and provide that unless the condition is remedied within the time allowed by the statute the city is liable, are fair, just, and reasonable, and are adapted to the actual conditions which they are intended to meet.

We remark that by what we have said we do not wish to be understood as holding that the cities and towns of this state may not be held liable for injuries arising from the accumulations of snow and ice upon the streets or       6 sidewalks which are placed there by their own acts. Under such circumstances the municipalities have notice of their own acts, and must, respond in damages to persons injured through such negligence. We are not now dealing with such a case however.

While there are numerous other errors assigned and argued, in view of the conclusions reached those assignments are not material.

From what has been said it follows that the judgment should be, and it accordingly is, reversed, with costs.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.