## O'SHAUGHNESSEY v. VILLAGE OF MIDDLEPORT.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1904.)

1. MUNICIPAL CORPORATIONS—SIDEWALK—DUTY TO REMOVE SNOW.

    Failure of a city to remove snow from cross-walks at a time when the snow in the street is so deep that the clearing of the cross-walks would render them practically impassable for vehicles is not negligence entitling a person injured by falling on a cross-walk to recover from the city.

    Williams, J., dissenting.

Appeal from Trial Term, Niagara County.

Action by Ann O'Shaughnessey against the village of Middleport. From a judgment for plaintiff for $404.23, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Thompson & Sheldon, for appellant.

Judson & Richardson, for respondent.

STOVER, J. This action is brought for injuries received from a fall upon a cross-walk, which was alleged to have been in an unsafe condition, by reason of the failure of the defendant to discharge its duty. The plaintiff, a large woman, weighing 175 pounds, while walking on the cross-walk on the 11th day of February, 1902, slipped, fell, and sustained injuries. The cross-walk in question leads from a

¶.1. See Municipal Corporations, vol. 36, Cent. Dig. § 1627.

bridge which crosses the canal, across a street running along the side of the canal, and has a descending grade from the bridge to the sidewalk on the opposite side of the street. The plaintiff's testimony is that she was picking her way, for it was slippery and "hunky," and her feet suddenly slipped from under her, and she fell. The evidence showed that the weather had been very stormy for two or three weeks prior to the time of the accident, snow having fallen every day or two from the 21st day of January to the date of the accident; that on the 6th of February there was 14 inches of snow on the ground; that an inch and a half of snow fell on the 7th; that on the 8th 6 inches of snow fell, and 20 inches on the ground; on the 9th there was half an inch of snow fell, and on the 10th an inch of snow, and 21 inches on the ground; that on the 11th there was 20½ inches of snow on the ground. Teams had traveled the street across the cross-walk, leaving some ridges of snow where the runners of the sleighs had passed. The evidence of one of the plaintiff's witnesses was that a severe storm occurred on the 22d of January, and he thought the snow on the 10th of February was equal to it. The evidence further showed that for a week prior to the accident the temperature had been below the freezing point, ranging from 1 to 24 deg. The plaintiff explains that, in using the word "hunky," she means uneven, and that such unevenness was caused by the people walking over the snow. The evidence is practically uncontradicted that it was a season of storm and snowfall, with low temperature. Some of the plaintiff's witnesses testified that they did not know of the walk having been cleaned, and, under objection, some of the witnesses were allowed to testify that they thought it had not been cleaned or shoveled during the winter. The testimony of the street commissioner of the village was that he cleared the walks of the village, employing all the help he could get, and that the day before the accident he shoveled this cross-walk himself; that it was not shoveled down to the bottom, because to do this would involve the removal of the snow from the street, or render the street impassable for teams, but that he leveled the cross-walk, and kept it level with the roadbed; that the snow at this point was about eight inches in depth, and that the snow on the level was three or four feet in depth. He also testified that the walk was shoveled on the 10th of February.

It is quite clear from the testimony that plaintiff received her injury from slipping upon the cross-walk, and the question presented in this case is whether negligence can be predicated against a village for not removing snow from cross-walks during the stormy portion of the winter. It is frequently difficult to distinguish between adjudicated cases, nor is it always profitable to labor to reconcile adjudicated cases, rather than apply well-settled rules of responsibility. The duty resting upon municipal corporations to remove accumulations of ice and snow as it falls from time to time upon their streets is a qualified one, and becomes imperative only when dangerous formations or obstacles have been created, and notice of their existence has been received by the corporation. Harrington v. City of Buffalo, 121 N. Y. 147, 24 N. E. 186, citing Taylor v. City of Yonkers,

86 N.Y.S.—60

105 N. Y. 209, 11 N. E. 642, 59 Am. Rep. 492; Kaveny v. City of Troy, 108 N. Y. 571, 15 N. E. 726. In our climate it is impossible to prevent the accumulation of ice and snow during the winter season, or to remove such accumulations at all times. The case under discussion is a fair illustration of the difficulties encountered in an endeavor to keep streets in a passable condition during the winter. In the large cities of the state, provision is made for the removal of the snow from the streets; and yet, with large sums of money and convenient methods, it is matter of common knowledge that the larger municipalities are unable to prevent accumulations of snow and ice which lay for days and weeks, despite the greatest efforts to accomplish their removal. In smaller places, and localities where snowstorms are more frequent, the removal of snow is impracticable, if not quite impossible, so that such provision must be made for the use of the streets with the accumulations of snow and ice as may be practicable and reasonable. As to the sidewalks the snow may be removed, but, the removal of snow from cross-walks would involve a more dangerous condition to the teams and pedestrians than to allow them to remain untouched, as the removal of the snow and ice would form channels, or, if ridges in the snow were left simply for the use of teams, the obstruction thus created would be dangerous to pedestrians. So it is quite common to find the snow leveled in the street, and the cross-walks approached either gradually, or kept on a level with the sidewalks. These observations would seem to be apparent upon the mere suggestion of the situation, but it has been thought advisable to state them here, inasmuch as the argument is made that it was the duty of the municipality to remove the snow and ice which had accumulated upon the crosswalks.

It is a trite saying that municipalities are not insurers of the safety of travelers on the highway, and are not bound to anticipate every emergency, but that they are only required to exercise ordinary care and use ordinary diligence in whatever situation they may be placed; and yet it seems necessary to reiterate this doctrine in order to prevent the extension of precedent for submission of cases of this kind to the jury. Applying this rule to this defendant, it cannot be said that it was negligent in not keeping the surface of the cross-walk exposed, nor was it negligent in not keeping a perfectly smooth walk for pedestrians. It was bound to keep the street in a reasonably safe condition for the passage of both teams and pedestrians. And while the question of negligence was submitted in the general terms, and with the charge that only reasonable care was to be exercised, yet we think the proof shows that a finding that there was negligence on the part of the defendant in the care of this highway was against the weight of evidence, and unwarranted by the testimony. If a recovery can be sustained under the testimony in this case, a village has but small hope of escaping responsibility for injury to any one who may happen to slip upon one of its cross-walks in the winter. Sidewalks and cross-walks are liable to become dangerous in the winter, but such dangers are apparent to all, and, as stated in Harrington v. City of Buffalo, "accidents occurring from such causes are chargeable solely to the persons injured, unless it can be shown that the cause

thereof has been occasioned, aggravated, or negligently permitted by the act of some third party charged with the duty of obviating or removing it." In this case the accident occurred about 3 o'clock in the afternoon, the person injured having full knowledge of the condition of the street, and yet the only explanation of the accident is that "the two feet were taken right out from under me." We think it was incumbent upon the plaintiff to bring herself within the rule above quoted, and the evidence fails to do this.

There were some exceptions taken upon the trial which we deem erroneous, but, for the reasons above stated, the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except WILLIAMS, J., who dissents.