Marianne Dupont, Respondent, *v.* The Village of Port Chester, Appellant.

*Municipal corporations — snow and ice upon sidewalks and streets — when municipality not liable for injuries caused by fall upon icy street crossing — appeal — certificate that case contains all of the evidence not necessary for a review of the exceptions taken at the trial — when exception to a nonsuit or dismissal of complaint can be reviewed by Court of Appeals.*

1. The duty of a municipality to keep its sidewalks free from snow and ice does not, in the absence of express provision of statute, apply to the same extent to a crosswalk or crossing on a public street. ·

2. In a municipality, particularly a village, where it is not required by charter that snow and ice be removed from the entire street, the duty as to crosswalks and crossings is performed when they are kept free from dangerous formations or obstacles.

3. Where there is no structural defect in the crossing itself, and its temporary condition is the same from curb to curb, and as at all other crossings in the village, and it does not appear that the plaintiff slipped by reason of any particular formation of snow or ice or any obstructions or dangerous formation upon the crossing or street, the municipality is not liable.

4. The certificate to a case that it contains all the evidence received upon the trial is necessary for the appellant when he seeks to show that the judgment is contrary to the evidence or against the weight of evidence, but it is not necessary to enable him to review the exceptions taken at the trial, including an exception to a motion for a nonsuit or dismissal of the complaint.

5. An exception to a nonsuit or dismissal of the complaint on the ground that the evidence does not show a cause of action raises a question of law that can be reviewed in the Court of Appeals unless the decision of the Appellate Division is unanimous.

*Dupont* v. *Village of Port Chester*, 138 App, Div. 924, reversed.

(Submitted January 25, 1912; decided February 2, 1912.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 3, 1910, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Jerome Alvord Peck* for appellant. The complaint of the plaintiff should have been dismissed at the close of her case. The plaintiff failed to prove any negligence on the part of the defendant. (*Brennan* v. *City of New York*, 130 App. Div. 267; 197 N. Y. 544; *Harrington* v. *City of Buffalo*, 121 N. Y. 147; *Kenney* v. *City of Troy*, 108 N. Y. 567; *Ayres* v. *Village of Hammondsport*, 130 N. Y. 665; *Litchenstein* v. *Mayor, etc.*, 159 N. Y. 500; *Moran* v. *City of New York*, 98 App. Div. 301; *Kortlang* v. *City of Mount Vernon*, 129 App. Div. 535; *Ballard* v. *Vil. of Hamburg*, 143 App. Div. 719.)

*Michael J. Tierney* and *De Witt H. Lyon* for respondent. There is evidence to support the verdict. (*Kopper* v. *City of Yonkers*, 110 App. Div. 748; 188 N. Y. 592.)

CHASE, J. The plaintiff, at about eleven o'clock on the night of December 23, 1904, fell while crossing over the brick pavement at the intersection of North Main and Adee streets in the defendant village and received the injuries for which this action is brought. The sidewalks along the streets used by her were clear of snow and ice.

The plaintiff testified that in crossing the street she first stepped in water, then took three more steps when her feet went out from under her and she fell. She further testified that so far as she observed the condition of the street between the curbs was all the same; that she did not see the ice before she fell, although after she was down she saw ice all around her and that it was very rough.

The brick pavement was covered with an accumulation of snow and ice from three to six inches deep and it had been in that condition for several days. There was a slight grade toward North Main street. There had been a week or more of snow storms and cold weather, and on

the day of the accident and perhaps on the day preceding it had moderated. In the line of the sidewalk, on the west side of North Main street where people cross Adee street at the intersection of said streets, there was some depression in the snow and ice, which was from two to four feet wide. It was caused by people treading upon the snow as it fell and as so packed down it was in some places smooth and in some places rough. The condition of such crossing extended from curb to curb and was not confined to a particular place. The crosswalks of the village were all in practically the same condition. There had been severe weather and frequent storms, and there were great quantities of snow and ice in the village, and sleighs drawn by horses were used upon the streets. It appears from the record that three persons had fallen while crossing at the intersection of said streets during the day or the day preceding the accident to the plaintiff, and one of the persons so falling had called the attention of a trustee of the village to the fact of his fall, and he testified that he told the trustee that the walk was in a dangerous condition and should be cleaned.

The particular place where the plaintiff and the others mentioned slipped and fell does not appear. It may in each case have been within the bounds of the depression or upon the sides thereof, upon level and smooth or rough, uneven or slightly sloping ice formations. The exact place where they slipped may have been and probably was different in each case.

There is a difference in the duty of a municipality regarding the care of sidewalks used wholly by pedestrians and crosswalks or places where people cross over streets which are used in winter with teams attached to sleighs. Where a street in a village is traveled by the public with sleighs in the usual way when there is an accumulation of snow thereon, particularly in streets without specially formed crosswalks, the removal of all snow and ice at every crossing would materially interfere

23

with the convenient and practical use of the street for trucking and driving.

Even if the entire removal of snow from a crosswalk is desirable for its use by pedestrians, the ordinary travel upon a street necessarily carries more or less snow upon the crosswalk, and when it thaws and freezes with the varying temperature it would be quite ·impossible except by continuous effort to keep crosswalks or crossings wholly free from snow and ice. We repeat that the obligation resting upon a municipality to keep its sidewalks free from snow and ice does not, in the absence of express provision of statute, apply to the same extent to a crosswalk or crossing on a public street.

By the charter of the village of Port Chester it is provided that the trustees shall have power and it shall be their duty: "To prevent and remove all incumbrances, obstructions and encroachments, from any cause whatever, upon the public streets, alleys, bridges, docks, public squares or grounds, sidewalks or crosswalks of said village, and to cause the same to be removed and the streets to be cleansed and unobstructed. * * *" (Laws of 1868, chap. 818, title III, § 1, subd. 7.) "To compel all persons to keep clean and remove from the sidewalks and gutters in front of the premises owned or occupied by them, all snow, ice and dirt, and to keep the said sidewalks and gutters and streets clean." (Subd. 8.)

The charter does not expressly provide that the village shall keep the crosswalks of the village free from snow and ice. The duty resting upon municipal corporations to remove accumulations of snow and ice becomes imperative only when dangerous formations or obstacles have been created. (*Harrington* v. *City of Buffalo*, 121 N. Y. 147; *Taylor* v. *City of Yonkers*, 105 N. Y. 202 209; *Kinney* v. *City of Troy*, 108 N. Y. 567; *O'Shaughnessey* v. *Village of Middleport*, 93 App. Div. 93; *Owen* v. *City of New York*, 141 App. Div. 217.)

In a municipality, particularly a village, where it is

not required by charter that snow and ice be removed from the entire street, the duty as to crosswalks and crossings is performed when they are kept free from dangerous formations or obstacles. A temporary condition caused by storms that for the time being cover the roadway with snow from curb to curb does not of itself create a dangerous condition of the street, and if it is left to facilitate the use of the street for driving or otherwise it is not negligence on the part of the municipality unless there is something in the way in which the snow is left or the form which it subsequently takes as to thereby create an incumbrance, obstruction or special danger.

In this case, where there was no structural defect in the crossing itself, and its temporary condition was the same from curb to curb, and as at all the other crossings in the village, and it does not appear that the plaintiff slipped by reason of any particular formation of snow or ice or obstruction or dangerous formation upon the crossing or street, the municipality is not liable.

In *Brennan* v. *City of New York* (130 App. Div. 267, 268) the court, referring to an appeal from a judgment obtained in an action for personal injuries incurred by a fall upon a crosswalk, say: "The claim is that the plaintiff slipped on hard or packed snow or ice on the crosswalk. It is not enough to show snow or ice to show that the city was negligent. In this variable winter climate of ours, falls of snow, followed by rain, or by thawing, and then by freezing, and so alternating from day to day, are common. The city is in no way responsible for such conditions; nor is the impracticable duty put upon it of keeping the streets free of such snow and slush. This general condition all over the city is the work of nature, and cannot be guarded against. But if the city should negligently suffer snow and ice to remain and accumulate in a particular place, until it became of a permanent nature, and a dangerous obstruction to pedestrians, then it would be liable, and this is the measure of its liability."

The judgment of reversal entered in the *Brennan* case was affirmed in this court (*Brennan* v. *City of New York,* 197 N. Y. 544).

The evidence disclosed by the record in this case is not sufficient to sustain the judgment against the defendant.

The respondent asserts that the certificate to the printed case does not show that such case contains all the evidence received upon the trial, and that, therefore, the Appellate Division had and this court has the right to assume that evidence was given upon the trial to sustain the verdict.

Such a certificate is necessary for the appellant when he seeks to show that the judgment is contrary to the evidence or against the weight of evidence, but it is not necessary to enable him to review the exceptions taken at the trial, including an exception to a motion for a nonsuit or dismissal of the complaint. (*Halpin* v. *Phenix Insurance Co.,* 118 N. Y. 165; *Brayton* v. *Sherman,* 119 N. Y. 623; *Rosenstein* v. *Fox,* 150 N. Y. 354.) An exception to a nonsuit or dismissal of the complaint on the ground that the evidence does not show a cause of action raises a question of law that can be reviewed in this court unless the decision of the Appellate Division is unanimous.

The judgment should be reversed and a new trial granted, costs to abide the event.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WILLARD BARTLETT and HISCOCK, JJ., concur.

Judgment reversed, etc.