## CITY OF WACO v. DIAMOND et al.
### No. 1088.

Court of Civil Appeals of Texas. Waco.
Jan. 28, 1932.

On Motion for Rehearing Feb. 18, 1932.

Rehearing Denied March 3, 1932.

John McGlasson and Geo. W. Morrow, both of Waco, for appellant.

H. O. Dabney and F. M. Fitzpatrick, both of Waco, for appellees.

BARCUS, J.

This is an action by appellees against appellant to recover damages for personal injuries sustained by Mrs. Diamond as the result of her slipping and falling on snow and ice at Sixth and Austin streets in the city of Waco. On the occasion of the accident Mrs. Diamond had gone to town on a street car, and, after alighting therefrom onto the safety zone, she attempted to cross to the sidewalk, and, in doing so, slipped on the ice, fell, and broke her arm.

Appellees alleged that on December 20, and 21, 1929, approximately fifteen inches of snow fell in the city of Waco, and that appellant negligently permitted same to remain on the street crossings and particularly at the safety zone on Sixth and Austin streets until

Tuesday, December 24th; that during said time the snow was worked up and squeezed against the safety zone where it formed a slippery ice pack the height of the safety zone sloping toward the street; that after she alighted from the street car she started across to the sidewalk and when she stepped on the ice she slipped and fell and broke her arm. That appellant negligently permitted the ice to remain against the safety zone and negligently failed to have same removed therefrom.

In response to special issues the jury found, among other things, that the street on Sixth and Austin adjacent to the safety zone where Mrs. Diamond alighted from the car was not in a reasonably safe condition; that appellant failed to exercise ordinary care to keep same in a reasonably safe condition; that same was negligence which was a proximate cause of the injuries; that by the exercise of ordinary care appellant could have discovered the unsafe condition of said street and by the exercise of ordinary care could have removed the frozen ice and snow from the safety zone so as to make the street in a reasonably safe condition; that it was negligence for appellant not to have discovered said condition, and that said negligence was the proximate cause of the injury; that Mrs. Diamond was entitled to $700 damages for injuries sustained and $50 doctors' bill.

Appellant presents twelve propositions for review. By its propositions, 1, 2, 3, 4, 5, 8, 9, 10, and 11, appellant presents the general contention that the trial court erroneously overruled its general demurrer and a special exception in the nature of a general demurrer and its request for a peremptory instruction and its motion to set the findings of the jury aside, because there was no evidence or pleading to support same. Its contention being that under no phase of the pleadings or evidence were appellees entitled to recover.

■■ Appellant's general theory being that the record shows that the snowstorm and the continued severe cold spell following same was of such an unprecedented nature for this section of Texas, it was not required to use any more effort than it did to remove the snow and ice from said safety zone, and that it was not in any way responsible for the condition existing which caused the snow and ice to accumulate on the street adjacent to said safety zone. Its further general contention is that Mrs. Diamond was as a matter of law guilty of contributory negligence in attempting to go directly across from the safety zone to the sidewalk instead of walking from its end to the place for pedestrians to cross the street and then to the sidewalk. We overrule these propositions. Appellees specifically alleged that appellant negligently allowed snow and ice to remain on the street between the safety zone and the curb

and permitted same to pack against the safety zone so that same formed a slippery condition from the safety zone toward the street where she alighted and attempted to cross. She alleged that the place was on one of the busiest thoroughfares of the business and shopping district of the city.

The evidence shows without dispute that the place where the injury occurred was in the heart of the shopping district and on one of the busiest thoroughfares of the city. On Friday night and Saturday, December 21st, from ten to fifteen inches of snow fell in Waco, which was followed by an extremely cold spell. The snow remained on the streets until December 24th. Appellant had constructed at Sixth and Austin streets where the injury occurred, as well as at other busy corners in the city, a concrete safety zone three and one-half to four feet wide, twenty to forty feet long, six to nine inches high, lacking five feet of reaching the crossing where pedestrians were to cross from one street to another. It was used for pedestrians in alighting from or getting on street cars. Straight across from the safety zone to the sidewalk was about twelve feet. As a result of the heavy snow, the vehicles in going up and down the street packed the ice and snow against the curb and against the side of the safety zone. The snow ceased falling about 3 o'clock Saturday afternoon, December 21st. The injury occurred about 9:30 a. m. December 24th. It was the general custom known to the officials of appellant that passengers alighting from the street car ordinarily went straight across to the sidewalk. Mrs. Diamond testified that when she alighted from the street car at the time she received the injury, she started directly across from the safety zone to the sidewalk; that as she stepped off her foot slipped on the ice and she fell and broke her arm; that after she had fallen she noticed that the snow had frozen until it was a solid block of ice against the safety zone angling from the top of the zone, sloping toward the sidewalk; that she had been riding the street cars for many years, and that she and other passengers had universally gone from the safety zone straight across the street to the sidewalk; that she did not notice or see the condition of the ice being packed against the safety zone until she had fallen.

Appellant had in its employ at said time on its street force about eighty-five men. Its manager and street foreman testified they realized on Monday morning that the snow was not going to melt, and, in order to protect the pedestrian travel in the business district of the city, they put four men to work on Austin avenue beginning at Third street and instructed them to clean the street crossings up to Ninth street and to clean the snow and ice from the safety zones and clean a path from the safety zones to the sidewalk.

The men were to pile the snow and ice and the city then used its trucks to haul same away. The men testified that they were instructed to and did begin at Third street and worked out Austin avenue and cleaned the snow from the safety zone and made a path across to the sidewalk. They further testified that they reached Sixth and Austin street on Monday night and Mrs. Diamond testified that, when she came to town on Tuesday morning, the day of the accident, they were working at Eighth and Austin. The street foreman testified that he instructed the men to clean the snow away from the safety zone and supposed that they had done so; that he inspected some of them and saw it was done, but that he did not inspect the one at Sixth and Austin where the injury occurred. The workmen testified they cleaned the snow and ice from the safety zone. Mrs. Diamond testified that the snow and ice had not been removed from said safety zone, but that it was at the time she fell packed against it in such a slippery condition that it caused her to fall. The accident occurred about seventy hours after the snow ceased falling. We think the testimony was sufficient to show that the city manager and street foreman of appellant knew and realized the dangerous condition that the snow caused, and also that it was necessary for the city to use some precautionary measures to protect the pedestrian travel in the business section of the city, and that they did undertake to relieve said situation and instructed the street force to remove the snow and ice obstruction from the safety zone in question. The evidence is also sufficient to support the jury's finding that the street force did not remove said snow and ice from the safety zone in question, and that their failure to perform this task was negligence which proximately caused the injury.

■ By reason of our climatic conditions this state has had few, if any, cases involving the liability of a municipality for permitting snow and ice to remain upon its streets and sidewalks. The general rule governing municipalities is well stated in City of Dallas v. Maxwell (Tex. Com. App.) 248 S. W. 667, 670, par. 1, 27 A. L. R. 927, as follows: "A municipality is charged with the duty of exercising ordinary care to so construct and maintain its public highways as to render them reasonably safe for ordinary travel." An elaborate treatise on the responsibility resting upon a municipality to keep its streets and sidewalks clear of snow and ice is given in 43 C. J. pars. 1799 to 1805 and 13 R. C. L. 408 and the annotated notes in 32 A. L. R. 1293. The general rule as laid down by said authorities is that a municipality.is required to exercise reasonable care to see that its streets and sidewalks are kept free from ice and snow and thereby keep them reasonably safe for travel. The question as

to whether it has performed these duties is ordinarily a question for a jury's determination. A large number of opinions are cited by said authorities,in support of said general rule. No useful purpose could be served by attempting to quote at length therefrom.

■ By its proposition 6 appellant contends that it was error for the court not to instruct the jury upon whom the burden of proof rested. This proposition, we think, is without merit. Each of the questions propounded by the court began with the statement: "Do you find from a preponderance of the evidence." This has been held by our courts as being the best method of charging on the burden of proof on special issues. Federal Surety Co. v. Smith (Tex. Com. App.) 41 S.W.(2d) 210.

■ By its proposition 7 appellant contends that it was error for the trial court to submit issue No. 2 to the jury without instructing it what was a reasonably safe condition under the circumstances and conditions surrounding and existing at the time and place of the alleged injury. We overrule this proposition. The issue asked the jury to determine from a preponderance of the evidence whether the street adjacent to the safety zone was in a reasonably safe condition at the time Mrs. Diamond sustained her injury. The phrase, "reasonable safe condition," is not such a technical phrase as requires the trial court to attempt to define same. No definition of said phrase could be more explicit than the phrase itself. The words used are those of common everyday use. Spurlock v. Hilburn (Tex. Civ. App.) 32 S.W.(2d) 396 (error dis.) and authorities there cited. We think the rule is well stated in the opinion by the Commission of Appeals in Robertson & Mueller v. Holden, 1 S.W.(2d) 570, as follows: "In the nature of things, the statute has not attempted to declare what 'legal terms' shall be explained or defined further than 'shall be necessary to enable the jury to properly pass upon and render a verdict on such issues.' Reasonable necessity, considering the term or terms used, then, should be the test. Ordinary words of simple meaning, of course, need not be defined."

■■ By its twelfth and last proposition, appellant contends that the portion of the judgment for $50 doctors' bill is without support in the evidence. Its contention being that there is no evidence showing that appellee incurred or agreed to pay same. We sustain this contention. The appellees did not testify relative to the doctors' bill. Dr. Wood, the attending physician, testified that a reasonable fee for such services as he rendered would be $65 or $70. He did not, however, testify that he had charged appellees that or any other definite fee for his services. The rule is well settled that in cases of this nature parties can only recover such medical

fees as are reasonably necessary, and that have been actually incurred and which the party has paid or has become responsible for. In response to special issues submitted, the jury found a reasonable doctors' bill to be $50. It did not, however, find that appellees had become obligated to or had agreed to pay same.

For this error, the cause is reversed and remanded. Since the record shows affirmatively that only $50 is embraced in the judgment of the trial court as doctors' bill, if appellees will file a remittitur of said $50 within fifteen days from this date, the judgment of the trial court will be reformed and affirmed. If said remittitur is not filed, the judgment will stand reversed and remanded.

## ALEXANDER, J. (dissenting).

I cannot agree to an affirmance of this judgment upon the filing of the remittitur as suggested in the majority opinion. The appellant requested an instructed verdict in its behalf. The court refused the request. In my opinion the evidence was insufficient to justify a submission of the case to the jury. I have been unable to find any Texas cases discussing the liability of a city for injuries sustained by pedestrians by falling on ice or snow, but there are many cases from other jurisdictions discussing such liability.

The injury in this case did not occur on a sidewalk. It occurred in the street between the safety zone and the curb. This space was used by pedestrians in going from the safety zone to the curb and was also used as a traffic lane for automobiles and other vehicles. It would be properly classed as a crosswalk and not as a sidewalk. The duty resting upon a city to keep its sidewalks free from ice and snow does not apply to the same extent to a crosswalk or crossing on a public street, nor would it apply in this case to the crossing used in passing from the safety zone in the customary way to the curb. This is due to the fact that it is more difficult to keep crosswalks free from ice and snow. Where a street is traveled by the public with vehicles, when there is an accumulation of snow thereon, the removal of all snow and ice at every crossing would materially interfere with the convenience and practical use of the street for trucking and driving. Even if the entire removal of snow from a crosswalk is desirable for its use by pedestrians, the ordinary travel upon a street necessarily carries more or less snow upon the crosswalk, and when it thaws and freezes with the varying temperature it would be quite impossible, except by continuous effort, to keep crosswalks or crossings wholly free from snow and ice. Dupont v. Village of Port Chester, 204 N. Y. 351, 97 N. E. 735, 39 L. R. A. (N. S.) 1167, 1170, Ann. Cas. 1913C, 1066; Brennan v. City of New York, 130 App. Div. 267, 114 N. Y. S. 578, 580; O'Donnell v. Butte, 65 Mont. 463, 211 P. 190, 32 A. L. R. 1284, 1289.

The general rule is that ice or snow upon a sidewalk in its natural state is not to be classed as a dangerous obstruction such as a city is required to remove, and that a city is not liable for injuries resulting from falls caused by slippery sidewalks occasioned by the accumulation of snow and ice from natural causes. Nor is the city liable for a fall caused by the slippery, rough, and uneven condition of a sidewalk due to the alternate melting and freezing of the snow, and the travel thereon by the public, so long as the rough and uneven condition does not amount to an unusual or dangerous obstruction to travel. The mere fact that the sidewalk, as the result of the falling of snow, and the traffic thereon, has become uneven and slippery, is not sufficient in itself to make a cause of action. Gist v. City of St. Joseph (Mo. App.) 220 S. W. 722; Berger v. Salt Lake City, 56 Utah, 403, 191 P. 233, 13 A. L. R. 5; 13 R. C. L. 409; Dapper v. Milwaukee, 107 Wis. 88, 82 N. W. 725. This is due to the fact that a general snow falling throughout the city necessarily covers many miles of sidewalks and streets and immediately after the snowfall the snow is beaten down by the travel of thousands of people. It necessarily becomes rough, uneven, and slippery. To remove all of this snow would present an almost unsurmountable task and would require an expenditure of an enormous sum of money. Moreover, it is generally known that the elements relieve such a condition about as rapidly as it could be relieved by the city, and the city may, therefore, ordinarily await, without negligence, a change of temperature which will remove the danger. Furthermore, when such a condition exists, it is obvious, and every one is or should be on his guard. Every pedestrian on the sidewalk or in the street is warned by all of his surroundings that ice and snow abound, and consequently the danger of slipping and falling is to be apprehended at every step. The danger due to the ordinary obstruction caused by such a condition is excepted from the category of obstructions for which the city is liable on the ground of the impracticability of the city's removing it, and the fact that the danger thereof is apparent to people using the streets and sidewalks. Vonkey v. City of St. Louis, 219 Mo. 37, 117 S. W. 733; Armstrong v. City of Monett (Mo. Sup.) 228 S. W. 771, at page 774; Staley v. City of New York, 37 App. Div. 598, 56 N. Y. S. 237.

It is only when such snow or ice has been permitted to accumulate in ridges or in irregular or uneven forms or heaps in such a way as to constitute an unusual or dangerous obstruction or special danger to travel and interferes with the travel in such a manner that a pedestrian could not, in the exercise of ordinary care, pass over it without danger of

tripping or falling—in other words, when the obstruction is such as in fact interferes with travel—that the city is required to remove same. Dupont v. Port Chester, 204 N. Y. 351, 97 N. E. 735, 39 L. R. A. (N. S.) 1167, 1170, Ann. Cas. 1913C, 1066; Brennan v. City of New York, 130 App. Div. 267, 114 N. Y. S. 578, 580; Armstrong v. City of Monett (Mo. Sup.) 228 S. W. 771, 774; Vonkey v. City of St. Louis, 219 Mo. 37, 117 S. W. 733; O'Donnell v. Butte, 65 Mont. 463, 211 P. 190, 32 A. L. R. 1284, 1289; Reedy v. St. Louis Brewing Ass'n, 161 Mo. 523, 61 S. W. 859, 53 L. R. A. 805. It must be an unusual or exceptional danger, that is to say, different in character from conditions ordinarily and generally brought about by the winter weather prevailing in the given locality. O'Donnell v. Butte, 65 Mont. 463, 211 P. 190, 32 A. L. R. 1290; Williams v. New York, 214 N. Y. 259, 108 N. E. 448.

In the case at bar the snowstorm was general throughout the city and surrounding country. The snowfall measured about eleven inches. It was an unusual, but not an unprecedented, snow for this section of the state.

The snow ceased falling about three days prior to the injury. At the time plaintiff left her home on the morning of the accident there was snow on the ground throughout the city. She therefore had notice of the danger of slipping and falling. The top of the safety zone where she was injured was about six inches higher than the level of the pavement and was about twelve or fourteen feet from the curb. The only testimony in the record describing the scene of the accident and the manner thereof is that of plaintiff herself, which testimony is as follows: "That safety zone did not have any snow or ice on top of it. After I got off the safety zone, I went in a southerly direction to the sidewalk in front of what was then McKennon's drug store. That snow had frozen until it was just a solid block of ice, and when I made the second step, my foot slipped from under me and I fell and broke my arm. The ice that I spoke of awhile ago was like that (illustrating with hands); it was angling like that down from the top of the zone, sloping towards the sidewalk. The high part of the angle was up next to the safety zone, and it lacked about an inch being as high as the safety zone, and then it sloped down towards the pavement, and that is where I fell. I can indicate with that stick about the angle that it was; I think it would be about that far (indicating on pointer). That would be nearly two feet, and it sloped over toward the pavement. When I stepped on that ice there angling off of the safety zone, I did not slip when I put my first foot on there; it was on the second step that I slipped." This is all of the evidence on the question. From this testimony it will be seen that the high part of the ice where plaintiff fell was about five inches high—one inch less than the height of the safety zone—and sloped to the pavement for a distance of about two feet to the south edge of the ice.

Immediately after the snow ceased to fall on the previous Saturday it became very cold, the temperature dropping below zero, but thereafter the temperature alternated between thawing in the daytime and freezing at night. At the time of the accident on Tuesday morning there was unfrozen slush between the ice near the safety zone and the curb. There is nothing in the record to show when the ice and snow that caused the fall accumulated at the place of the accident. The space between the safety zone and the curb was a traffic lane used by automobiles. This snow may have fallen at the place of the accident three days prior thereto and remained there until plaintiff was injured, or the snow that fell at the place of the accident may have melted or been removed and other snow carried to the place of the accident by passing vehicles the night before the injury. If the latter condition existed, then certainly the time in which the city was required to discover and remove the snow did not begin until the snow had been placed there by passing vehicles and had frozen in a dangerous heap, and the city would be entitled to a reasonable time thereafter in which to discover the unusual danger, if any, and to remove the same. Neither is there any evidence to show when the snow that caused the fall became frozen and slippery, nor when it became heaped into such a position as to be dangerous. The vital question to be determined was whether the dangerous formation, if any, had existed sufficiently long to require the city to discover and remove same. The burden was on appellee to allege and prove such a state of facts. Such a condition cannot be presumed from the mere fact that the snow had ceased falling three days prior to the injury nor from the mere fact that the condition was possibly dangerous at the time of the accident. There is no evidence whatever on this question. The city was not required to remove ordinary snow and ice from the walk. Its duty to discover and remove same did not arise until the snow had become so heaped and frozen as to form a dangerous hazard. If the snow was soft and pliable the day before the injury, it did not constitute a dangerous obstruction and the city was not required to remove the same. There was no evidence that the city actually discovered the dangerous condition. The evidence could not be any stronger than the pleadings. The plaintiff alleged that the traffic between the safety zone and the curb "worked said snow up to where it was moist and soft in the daytime and squeezed it up against the safety zone; * * * that during the night time said snow would congeal and freeze and become solid." There is no evidence to support such allegations, but, if we were to accept same as true and were to

find that the snow became frozen in a dangerous heap, as alleged, some time during the night prior to the accident, which occurred about 9:30 the following morning, the city would not have had time to discover and remove same prior to the accident, and therefore would not be guilty of negligence for its failure to do so. Vonkey v. City of St. Louis, 219 Mo. 37, 117 S. W. 733, 736; Armstrong v. City of Monett (Mo. Sup.) 228 S. W. 771, 774; Harrington v. City of Buffalo, 121 N. Y. 147, 24 N. E. 186; Reedy v. St. Louis Brewing Ass'n, 161 Mo. 523, 61 S. W. 859, 53 L. R. A. 805; Gist v. City of St. Joseph (Mo. App.) 220 S. W. 722; Wilson v. City of Clinton, 204 Iowa, 1183, 216 N. W. 698; Hyer v. City of Janesville, 101 Wis. 371, 77 N. W. 729; Kinney v. City of Troy, 108 N. Y. 567, 15 N. E. 728.

We seriously doubt whether the condition of the ice and snow at the time of the accident was such as to require its removal. Certainly there is no evidence that it had been in such condition long enough to charge the city with notice thereof and to make it guilty of negligence for failure to remove same.

On Motion for Rehearing.

BARCUS, J.

Appellees having filed a remittitur of the $50 doctors' bill recovered by them, in line with the suggestion made by this court in its original opinion, the judgment of this court reversing the judgment of the trial court is set aside, and the judgment of the trial court is reformed to the extent that the $50 allowed by the trial court as doctors' bill is eliminated therefrom, and the judgment of the trial court is reformed allowing appellees a recovery of $700, and interest thereon from the date of judgment in the trial court at the rate of 6 per cent. per annum.