### TEXAS & P. RY. CO. v. HANCOCK.
### No. 12779.

Court of Civil Appeals of Texas. Fort Worth. Feb. 18, 1933.

Rehearing Denied April 1, 1933.

Cantey, Hanger & McMahon, of Fort Worth, and C. W. Trueheart, of Longview, for appellant.

Jones & Jones, of Marshall, and R. E. Buck and J. H. Trickey, both of Fort Worth, for appellee.

DUNKLIN, Justice.

The Texas & Pacific Railway Company has appealed from a judgment in favor of J. H. Hancock for damages for personal injuries sustained by him alleged to have resulted from the negligence of one of defendant's employees. The jury assessed plaintiff's damages at the sum of $22,600, for which judgment was rendered, but later the court required a remittitur of $7,600 which was granted by plaintiff and the final judgment was for $15,000, the amount of the verdict less the remittitur.

Plaintiff was employed by the defendant as foreman and lineman in its telegraph and telephone department and was charged with the duty of constructing and maintaining telegraph and telephone lines used between stations in order to enable trainmen to keep in touch with the train dispatchers who directed the movement of trains. The city of Alexandria, in the state of Louisiana, was plaintiff's headquarters, from which he worked in different directions in performing the duties of his employment. He was furnished a hand car for that purpose, operated by an electric motor, and while returning from an easterly direction traveling in a westerly direction his motor car collided with an automobile driven by R. O. Wyatt who was engaged in the service of defendant as a civil engineer, and as a result of that collision plaintiff was thrown from his motor car and sustained injuries for which the recovery was awarded.

The place of the collision was in defendant's yards about three miles from the city of Alexandria and at a point where the main line of defendant's road on which plaintiff was traveling in his motor car was crossed by a highway on which Wyatt was traveling in his automobile at the time of the accident. Plaintiff was traveling in a westerly direction and Wyatt in a northerly direction. There were four railroad tracks at that point running east and west parallel with each other and approximately 13 feet apart; the main line, on which plaintiff was traveling, being the north track, and the highway, on which Wyatt was traveling, ran practically north and south and crossed all those tracks. As plaintiff approached the crossing a switch engine attached to two or three cars and engaged in switching operations was on the second switch track south of the main line and was obstructing the highway at its crossing of the switch track.

Wyatt, who was south of that crossing, stopped his automobile on account of that obstruction ahead of him but as soon as the switch engine moved off the crossing he started ahead· north and upon seeing the motor car approaching the highway crossing of the main line he stopped his machine in order to let it pass, but at the time he made the stop the bumper of his automobile had already protruded over the south rail of the main line and before he could back the machine the collision occurred, resulting in plaintiff's injury in the manner stated.

In answer to special issues the jury found that as Wyatt approached the place of collision he did not use ordinary care to keep a lookout for vehicles approaching on the track on which plaintiff was approaching and that failure was a proximate cause of the collision; that the rate of speed at which Wyatt was driving his automobile at the place of the collision was negligence and such negligence was a proximate cause of the collision. Other issues submitted were as follows:

"4-a. Was the plaintiff negligent in attempting to cross the grade crossing at the time and under the circumstances immediately prior to this accident? Answer: No.

"4-c. Was such negligence, if any you have found in 4-a the sole proximate cause of the collision? Answer: No.

"5. Was the plaintiff using ordinary care to keep a lookout for vehicles approaching on the grade crossing from the south as he approached the point of collision? Answer: Yes.

"7. Was the rate of speed at which the plaintiff was operating the motor car as he approached the point of the collision, and just prior thereto, negligence? Answer: No.

"8-a. Was such negligence, if any you have found as inquired about in No. 7, the sole proximate cause of the collision? Answer: No.

"9. Was the plaintiff negligent in standing up on the motor car? Answer: No.

"10-a. Was such act as inquired about in No. 9 the sole proximate cause of the collision? Answer: No.

"11. Did the collision occur without any negligence on the part of either Wyatt or Hancock? Answer: No.

"12. What sum, if paid now in cash, do you find should be awarded to the plaintiff, if any at all, which will fairly and reasonably compensate him for the injuries sustained in this collision? Answer: $22,600.-00.

"13. An employee assumes the risk of injury from dangers obviously incident to the discharge of duties of his employment in the way·and manner in which such employee voluntarily performs the work of his employ-ment, or is required by his contract to perform such work of his employment. He is not required to anticipate negligence of other employees unless he knows of the same and the dangers to himself therefrom in time, by the exercise of ordinary care on his part, to have avoided the injury, or should have known thereof by the exercise of ordinary care in time to have avoided being injured. Bearing in mind this instruction, please answer:

"Did Hancock assume the risk of the collision between his motor car and the automobile driven by Wyatt? Answer: No."

The issues of negligence on the part of Wyatt, determined by the jury, were all presented in the plaintiff's pleadings and the issues of negligence on the part of plaintiff were duly presented in the defendant's pleadings, both on the theory of contributory negligence and the theory of assumed risk, but with specific allegations of fact as a basis therefor rather than in the general terms in which those issues were submitted, as will appear in subsequent portions of this opinion.

Error has been assigned to the instruction given by the court in paragraph 13, copied above, as a guide to the determination of that issue, to the giving of which the defendant presented the following exceptions and objections before the same was read to the jury:

"Defendant excepts to the instructions of the court in connection with the submission of issue No. 13, because (a) that part of said instruction which reads 'He is not required to anticipate negligence on the part of his employer', raises a question not in issue under the evidence; (b) because said feature of the charge is a charge on the weight of the evidence; (c) because same charges a presumption not defined by statute; (d) because said .charge is abstract and misleading."

Many decisions are cited to the effect that such a charge is not an explanation or definition within the meaning of the provisions of article 2189, Rev. Civ. Statutes, reading as follows: "In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

And further holding that a charge of that kind is clearly a general charge upon a special issue and is improper when the case is tried on special issues. Texas & P. Ry. Co. v. Perkins (Tex. Com. App.) 48 S.W.(2d) 249; Owens v. Improvement District, 115 Tex. 263, 280 S. W. 532; Diadone v. Houston Belt & Terminal R. Co. ·(Tex. Civ. App.) 26 S.W.(2d) 366; Besteiro v. Besteiro (Tex. Civ. App.) 18 S.W.(2d) 829. The giving of that instruction would be reversible error

but for the fact that appellant's right to complain of it was waived by the request made by its counsel for the submission of the same issue with an instruction of a like general character, as shown by the following:

"Gentlemen of the Jury:

"Assumed risk is a term in a contract of employment expressed by the parties or implied by law from the circumstances of the employment, by which the servant agrees that dangers of injury obviously incident to the discharge of the duties of the servant's employment in the way and manner in which such servant voluntarily performs or executes the work of his employment, shall be at the servant's risk.

"Bearing in mind the foregoing definition of assumed risk, you will please answer the following special issue:

"Did J. H. Hancock assume, under the circumstances and conditions in evidence before you, the risk of the collision which occurred between the gas motor upon which he was riding, and the automobile which was operated by R. O. Wyatt? Answer 'yes' or 'no'."

Appellant stresses that portion of the court's instruction to the effect that an employee does not assume the risk of negligence of other employees unless he knows of the same, or could have known of it in time to have avoided the negligence which was not included in the requested instruction of defendant. The instruction so given by the court was a more comprehensive statement of the rule pertaining to assumed risk than that requested by the defendant, but we believe it clear that appellant cannot escape waiver of the right to object to the court's instruction by reason of that difference. It is sufficient to say that appellant invited the error in the instruction because it was a general charge. 3 Texas Jurisprudence, pp. 1031–1036, inclusive.

Among other defenses the defendant pleaded specially that prior to the accident and while plaintiff was approaching the crossing in question he knew it was raining and sleeting and that the rails of the track upon which he was operating his motor car were covered with water and ice, and were slick and slippery, and that it would be exceedingly difficult to stop the motor car by the operation and use of the brakes with which it was equipped; that notwithstanding such prior knowledge plaintiff approached the crossing at a rate of speed of approximately 20 miles an hour over the track in that condition and in so doing he was guilty of negligence, which was the sole proximate cause of his injury. It was further pleaded that by virtue of the same facts plaintiff assumed the risk of his injury.

Plaintiff testified, in substance, that when he approached the crossing where the accident occurred he saw a switch engine with some cars attached obstructing the road crossing of switch track No. 2, which was approximately 26 feet south of the crossing where the accident occurred. That when he approached the crossing in question his motor car was running from 20 to 25 miles an hour; that there was sleet and rain on the rails of the track on which he was traveling; that when he approached the crossing he thought the switch engine on the switch track would hold the crossing on that track until he could get by the crossing ahead of him and he speeded up the motor car to get across; that when he was about 50 feet from the crossing it looked like an automobile dropped out of the back end of the locomotive, and when he saw the automobile in which Wyatt was riding he applied the brakes of his motor car and began hollering, and when he got his motor cut off it seemed as if the wheels went to sliding and it was only a second or two until the collision.

R. O. Wyatt, who was driving the automobile, testified that in his opinion the motor car on which plaintiff was riding was running about 20 miles an hour at the time of the collision. N. H. McRoberts, who was on the back seat of the automobile, testified that he was able to estimate the speed of the motor car and that just prior to the time it struck the automobile it was running 20 or 25 miles an hour; that it was sliding and that it moved at practically the same speed after it began sliding.

Upon cross-examination plaintiff was asked the following question: "If you were traveling at a rate of speed at which you could have stopped your car, why didn't you stop it and prevent the collision? Answer: On account of wet rails."

To the giving of issue No. 7, shown above, appellant objected, on the ground that "such issue does not set out affirmatively the specific facts in such manner which would make up negligence, and is too general in its nature to afford a proper guide to the jury." The court overruled that objection and also refused to submit to the jury defendant's requested issue No. 4, reading as follows:

"Bearing in mind the definition of negligence given to you in this charge, you will answer the following question:

" 'Was the plaintiff guilty of negligence in operating said motor car upon the wet and slippery rails or tracks at the rate of speed found by you in answer to a preceding question? Answer yes or no. Answer: ———.'

"If you have answered the foregoing question 'no' then you need not answer the following question, but in the event you have answered the same 'yes' you will answer this question:

" 'Was such negligence on the part of plain-

tiff the sole proximate cause of the collision in question? Answer yes or no. Answer: ———.'

"In the event you have answered 'yes' to the foregoing question then you need not answer the following question, but in the event you have answered same 'no' then you will answer this question:

" 'Was such negligence on the part of the plaintiff a contributing cause to the collision in question? Answer yes or no. Answer ———.'

Issue No. 7, submitted by the court, was in general terms and would have authorized the jury to take into consideration all the facts and circumstances in evidence bearing on the question whether or not the rate of speed at which the plaintiff was operating the motor car as he approached the point of collision and just prior thereto, was negligence; but did not specifically tell the jury that in answer to issue No. 7 they should take into consideration the wet and slippery rails on which the motor car was traveling, which, as noted, was specially pleaded by the defendant.

Under the well-established rule of decisions in many cases, notably Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517, each party to the suit has the right to an affirmative presentation of the facts constituting a right of action or defense thereto which have been pleaded and which are supported by proof; and we have reached the conclusion that it was the duty of the court to give the requested instruction or else to so word the language of issue No. 7 as to indicate that the jury in determining that issue should take into consideration the wet and slippery rails over which plaintiff was traveling in his motor car, since they could reasonably conclude that if the rails were wet and slippery then plaintiff in the exercise of ordinary care should have traveled at a slower speed in approaching the crossing in order to avoid collision with vehicles that might be traveling on the highway; and especially so since it was one of the rules promulgated by the railway company and of which plaintiff had knowledge, that he was required to slow down his speed before reaching a highway crossing. The following decisions, and others cited and referred to in the opinions we believe support this conclusion: Northern Texas Traction Co. v. Gilbert (Tex. Civ. App.) 282 S. W. 850; Texas & N. O. R. Co. v. Ewing (Tex. Civ. App.) 46 S.W.(2d) 398; Dallas Ry. & Terminal Co. v. Garrison (Tex. Com. App.) 45 S.W.(2d) 183; and numerous other decisions cited in the opinions in those cases.

The court gave this instruction: "The burden of proof is upon the plaintiff to establish by a preponderance of the evidence the following answers: 'no' to No. 1; 'yes' to 2, 3, 4; 'no' to No. 11, and the answer, if any, to No. 12. The burden of proof is upon the defendant to establish by a preponderance of the evidence the following answers: 'yes' to 4-a, 4-b, 4-c; 'no' to No. 5; 'yes' to 6, 7, 8, 8-a, 9, 10 and 10-a and b; but in making your answers you may consider all of the evidence allowed by the court for your consideration."

Complaint is made of that portion of the instruction relating to the burden of proof placed on the defendant.

The objection urged to that instruction was that it virtually advised the jury as to the legal effect of their answers on such issues. Several decisions are cited holding that when a case is tried on special issues, it is error for the court to give a general charge on the burden of proof on any one of the issues, the reason for such holding being that the jury would necessarily know whether the finding thereon would be favorable to one party or the other. Some of those authorities are Texas Employers' Insurance Ass'n v. Adcock, 27 S.W.(2d) 363, by the Dallas Court of Civil Appeals, writ dismissed; Texas Indemnity Co. v. Davis, 32 S.W.(2d) 240, by the Amarillo Court of Civil Appeals, writ of error refused; Texas & Pacific R. Co. v. Bufkin, 19 S.W.(2d) 343, by the Eastland Court of Civil Appeals; Sunlite Co. v. Justice, 257 S. W. 579, by the Dallas Court of Civil Appeals, writ dismissed; Ford v. Couch, 16 S.W.(2d) 869, by the El Paso Court of Civil Appeals, writ dismissed; Wootton v. Jones (Tex. Civ. App.) 286 S. W. 680, writ dismissed. Upon those authorities we have reached the conclusion that the assignment of error now under discussion should be sustained. And in this connection we deem it proper to add that the question upon whom rests the burden of proof with respect to controverted issues of fact, is one of law to be determined by the court; the sole province of the jury being to determine those issues according to the preponderance of all the evidence bearing thereon. And when they are so instructed, a further instruction, in general terms, that the burden of proof as to such issues is on the plaintiff or the defendant, as the case may be, besides indicating to the jury in whose favor their findings will result, is not only superfluous, but, as held in Texas & Pacific Ry. Co. v. Reed, 88 Tex. 439, 31 S. W. 1058, such an instruction in the absence of a further instruction—which, however, was given in this case—that all the evidence bearing on the same issue may be considered, is erroneous, since the jury may be impressed that the party on whom the burden is cast cannot be given the benefit of any evidence which he himself did not introduce. And in our opinion it would be better practice to omit any abstract statement of the rules of law with respect to the burden of proof.

Furthermore, in Federal Surety Co. v. Smith, 41 S.W.(2d) 210, 214, by the Commission of Appeals, it was held that the use of

this language: "Do you find from the preponderance of the evidence," in the beginning of a special issue is the proper method for presenting the burden of proof; and it is obvious that that method would avoid the possible objections indicated above. See, also, to the same effect, City of Waco v. Diamond (Tex. Civ. App.) 46 S.W.(2d) 1049.

■ Dr. Alden Coffey, introduced as a witness in behalf of defendant, testified that a few days before the trial he made a thorough examination .of the plaintiff to determine whether or not he had sustained the injury to his head of which he complained, and that there was nothing disclosed by that examination which would indicate that he had any permanent injury to the brain whatever. He further testified at great length as to his reasons for the conclusions so reached. Thereafter, upon cross-examination by counsel for plaintiff, he was asked whether or not he recognized Dr. William Sharpe as an authority on "The Diagnosis and Treatment of Brain Injuries." To that question Dr. Coffey stated that he was familiar with that book and recognized it as an authority on that subject. Thereupon counsel read excerpts from the book, over objection by defendant's counsel, on the ground that it was hearsay, especially since the statements therein contained showed that the conclusions reached by the author were based largely upon the examination of the records of three large hospitals in New York City of patients there treated for acute brain injuries during a period of ten years.

In the case of Gulf, C. & S. F. R. Co. v. Farmer, 102 Tex. 235, 115 S. W. 260, opinion by Chief Justice Gaines, it was held that when a doctor has testified as an expert relative to personal injuries or diseases involved in the trial of a case he may, on cross-examination, be interrogated as to whether or not he recognizes a certain work as a standard authority on the same subject and if he gives an affirmative answer to that question, then excerpts from that work may be read to the jury, not as original evidence but solely for the purpose of discrediting the weight of the testimony of the witness. Upon the authority of that decision we overrule the assignment of error now under discussion. Of course, if defendant had so desired, the court doubtless would have instructed the jury that the excerpts so read from the book would be considered for no other purpose than to discredit the testimony given by Dr. Coffey.

■ Misconduct of the bailiff in charge of the jury while deliberating on their verdict was urged as a ground for a new trial; and upon the hearing of the motion several of the jurors and also the bailiff testified. According to the testimony of the jurors, after eleven members of that body had agreed that plaintiff's damages should be assessed at $22,-600, the remaining juror stubbornly contended that the amount of damages should be fixed at $35,000; arguing in that connection that the jury should take into consideration plaintiff's earnings. Following persistent efforts to induce him to agree to the sum already fixed by the eleven, the foreman rapped on the door for the bailiff who responded to the summons and at the instance of the foreman, went into the jury room, leaving the door partly ajar. Thereupon the foreman inquired of the bailiff whether or not the jury was permitted to talk of plaintiff's earnings; and the bailiff replied, "stick to your charge and stay away from personal affairs," or words of similar import. The bailiff testified to going into the jury room when called by Mr. Gordon, the foreman, and further as follows: "He wanted to know if it would be permissible, I believe he said, to discuss—as well as I remember it, the earnings of Mr. Hancock (plaintiff). I told him that as long as they did not discuss their personal experiences and stayed with the charge, it would be all right; that is all I remember saying."

Article 2195, Rev. Civ. Statutes, reads as follows: "The officer in charge of the jury shall not make nor permit any communication to be made to them, except to inquire if they have agreed upon a verdict, unless by order of the court; and he shall not before their verdict is rendered communicate to any person the state of their deliberations or the verdict agreed upon."

Article 2197 provides that the jury may communicate with the court by making their wish known to the officer in charge.

Article 2198 provides: "After having retired, the jury may ask further instructions of the court touching any matter of law. For this purpose they shall appear before the judge in open court in a body and through their foreman state to the court, either verbally or in writing, the particular question of law upon which they desire further instruction; and the court shall give such instruction in writing, but no instruction shall be given except in conformity with the preceding rules and only upon the particular question on which it is asked."

In Gerneth v. Galbraith-Foxworth Lumber Co., 38 S.W.(2d) 775, by the Commission of Appeals, a judgment of the trial court was reversed because the district judge who tried the case upon being told by the bailiff that the jury wished to communicate with him, went into the jury room and there communicated with the jury behind closed doors, remaining therein two or three minutes, all of which occurred in the absence of counsel engaged in the trial of the case. The court held that such action was in violation of the provisions of articles 2194 to 2198, and was therefore reversible error regardless of the question whether or not injury resulted therefrom to the losing party. Of like effect

is the decision of the Court of Criminal Appeals in John Lee v. State, 56 S.W.(2d) 453, rendered January 4, 1933 and not yet published [in State Report].

We have reached the conclusion that the public policy upon which those decisions were based applies with equal force here and that the communication of the bailiff to the jury, shown above, constitutes reversible error, regardless of whether or not appellant was prejudiced thereby.

For the errors pointed out, the judgment of the trial court is reversed and the cause is remanded.

LATTIMORE, J., not sitting.